## Nirdlinger's Estate.

Argued May 20, 1938. Before KEPHART, C. J., SCHAF-FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Frank A. Bedford, Jr.,* for appellants in No. 269 and appellee in No. 271.

*Joseph M. Leib* and *John J. McDevitt, Jr.,* with them *John J. McDevitt, III,* for appellees in No. 269 and appellant in No. 271.

*John Russell, Jr., Wintersteen, McCoy & Wintersteen, J. C. Murtagh* and *Raymond M. Remick,* for amici curiæ.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1938:

When this estate was first before us (327 Pa. 171, 193 A. 30), the important questions now presented were not

in view. The question raised on the former appeal was whether the proceeds of the sale of a property, acquired by trustees through foreclosure of a mortgage, should be apportioned between the life tenants and the remaindermen. It was held that they should and the formula set forth in the Restatement, Trusts, Sec. 241, was adopted as the method of apportionment. The formula provided by the Restatement is: "The net proceeds received from the sale of the property are apportioned by ascertaining the sum which with interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income. The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale."

The main problem now presented is a very practical one and is this: Where mortgages held by a trust estate have been foreclosed and the properties covered by them have been bought in by the trustees, who is entitled to the net rents during the time the properties remain unsold and are held by the trustees? The answer to be made affects not only this estate, but a great many others throughout the Commonwealth. If the problem should be solved in an abstract way, on the basis of a mathematical formula, intended to produce a theoretical equality between life tenants and remaindermen in trust estates, one solution might be arrived at, whereas if it is to be solved in a practical, workable manner, the mathematical formula provided in our previous decision will have to be made somewhat equitably elastic so far as rents are concerned.

Three solutions are proposed to us: (1) that the net rents shall be held by the trustees until the properties are sold, when the formula fixed by us shall be applied;

138

(2) that the trustees may pay over the rents or a portion thereof to the life tenants in the trustees' discretion; (3) that all the net rents shall be paid over to the life tenants, (a) with a liability to refund to the corpus of the trust any amount received in excess of that which the formula gives; (b) without the requirement to refund anything. In the event the second or third solution is adopted, a further question is, should the rents be paid to the life tenants from each property separately, or should the foreclosed properties be grouped?

The trying financial times, through which we are passing, have required modifications of the past views of everyone in matters financial. The existing financial situation has brought about a yielding to the plaints of life tenants, which might not have occurred in more stable financial periods, because of the hardships suffered by them, due to decrease in, or total failure of, income. Widows and children formerly financially comfortable, now reduced to penury from the drying up of income, are incidents of today which do not paint a pleasant picture.

Such situations caused us, speaking generally, when the case was here before, to say (p. 173), ". . . in nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminishment of principal to be paid to far off remaindermen. Life tenants should not be required to starve in order that remaindermen may ultimately feast." To which we may add, we think human experience shows the real purpose of most testators, in creating a family trust, is to hold intact a principal from which the life tenants may receive an income, and to guard them against improvidence, rather than to pass something on to remote persons, oftentimes unborn when the will is made.

The trend of our thought being that life tenants are to be favored when they can be, how shall the problem before us be worked out in the most practical and equitable way? In many, if not most instances, if the distribution of net rents, from properties taken over by trustees in foreclosure, is to be left to their discretion, the trustees for their own protection will not pay anything to life tenants, until the property has been sold, when the apportionment rule can be applied, and exact sums be allocated. This is what is happening now, with much hardship in many cases to life tenants. It is often necessary in the proper administration of a trust to retain properties following foreclosure for many years, and to deprive the life tenants of income during a long period would be to completely thwart the obvious intention of the testator. The real intent of testators is that life tenants shall presently receive accruing income, and, therefore, we think net rents from foreclosed properties, that is, gross rents, less taxes, insurance, repairs and other carrying charges, should be paid to life tenants. This was the conclusion of the court below and it decided that, where net rents are paid to life tenants, and where they have received more than would be due them under the formula, the trustees may recoup the amount of the overpayment out of other income in hand.

It was also determined that the net rents should be paid to the life tenants, not from the amount received from each individual property, but that all the properties taken over by foreclosure should be considered together, those which were productive of income, and those which were not, and that the amount distributable to life tenants should be the net result from all of the properties. After mature consideration, we have decided not to adopt this conclusion, and announce the rule that net rents, based upon the return from each individual property, shall be distributed to life tenants. In our opinion this establishes the most practical, best

workable and most equitable rule in the great majority of cases when the intent and purpose of testators is taken into account, and when it is borne in mind that each individual property involves a separate salvage operation. Persuasive arguments can be and have been made for each method. After weighing them carefully, we have determined the individual property plan as the most just. The carrying charges on unproductive property can be advanced out of principal. These advancements can be recouped when the properties are sold. The worst that could happen to the corpus would be that the property, when sold, would not bring enough to cover the advancements. This we think most unlikely. The property itself in the hands of the trustees is security to them for advances made. "Ordinary current expenses as well as extraordinary expenses incurred in connection with unproductive property are payable out of principal, unless it is otherwise provided by the terms of the trust. Thus, taxes and other carrying charges on unproductive land are payable out of principal, even though the trust estate includes other property from which an income is derived, unless it is otherwise provided by the terms of the trust. So also, where the trust estate includes a mortgage and the mortgagor defaults, the expenses of foreclosure are payable out of principal; and if the trustee purchases the property for the trust on the foreclosure sale and it produces no income, the carrying charges are payable out of principal until it is sold or becomes productive": Restatement, Trusts, Sec. 233m.

It is suggested in the brief filed amici curiæ, by a number of trust companies, while admitting the hardship that might be entailed upon life tenants by putting all of the properties, productive and unproductive, in hotch pot, that this hardship could be ameliorated through a petition to the court by a distressed life tenant for equitable relief from the rule. This we think would be an

unsatisfactory method of handling such a matter. Judge HOLLAND, President Judge of the Orphans' Court of Montgomery County, in a thoughtful opinion in *Develon's Est.*, 26 D. & C. 19, after a careful analysis of many of the reported cases, concluded that the rule of the Restatement, that taxes and other carrying charges on unproductive land are payable out of principal, even though the trust estate includes other property from which income is derived, is "the most equitable and expedient solution and a rule the application of which is not inconsistent with controlling authority." Again we repeat what has already been said in this opinion and in the previous case, it is better that life tenants' "incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminishment of principal to be paid to far off remaindermen."

The problems with which we are dealing have arisen in other jurisdictions to perplex their courts, as they have us, as the following somewhat brief review of decided cases will show.

The only case brought to our attention in which a court of final appeal has fully considered the main question here involved, whether net rents are payable to life tenants before the foreclosed property is sold, is *In re Otis' Will*, 276 N. Y. 101, 11 N. E. (2d) 556, (1937), in which that court declined to approve a lower court decision, that such net rents cannot be treated as distributable income until the original capital has been fully restored. The court said (p. 115) : "This means that, although a surplus remains after payment of carrying charges and of advances made out of principal, the life tenant can have nothing until the property is sold. We cannot take that view. 'The equities of a life tenant to receive the whole income that may accrue during his tenancy are every whit as great as that of the remaindermen to have the corpus of the trust preserved unimpaired.' " The court decided that the trustee might distribute the surplus income from rents in its discretion,

in this connection saying: "This discretion, moreover, should be exercised with appropriate regard for the fact that unless a life tenant gets cash he does not get anything in the here and now."

As to whether the life tenant should pay carrying charges on unproductive property, the cases are in a state of confusion. *In re Moore's Will,* 185 Minn. 342, 241 N. W. 63; *Hite v. Hite,* 93 Ky. 257, 20 S. W. 778; *Poole v. Union Trust Co.,* 191 Mich. 162, 157 N. W. 430, adopt the rule which we have, and place the burden of carrying charges on unproductive property on the corpus. In Massachusetts the question is in general determined by reference to the intention of the testator, the general principle being that carrying charges should be paid by life tenants: *Edwards v. Edwards,* 183 Mass. 581, 67 N. E. 658; *Jordan v. Jordan,* 192 Mass. 337, 78 N. E. 459; *Creed v. Connelly,* 272 Mass. 241, 172 N. E. 106. The New York courts, while recognizing the tendency to place carrying charges of unproductive property in all cases on principal, *Rowland's Est.,* 273 N. Y. 100, 6 N. E. (2) 393, hold that the carrying charges should be paid by life tenants unless the intention of the creator of the trust indicates otherwise: *In re Satterwhite's Will,* 262 N. Y. 339, 186 N. E. 857; *In re Chapal's Will,* 269 N. Y. 464, 199 N. E. 762; *Rowland's Est.,* supra. The New Jersey courts place the burden of carrying charges on life tenants: *Martin v. Kimball,* 86 N. J. Eq. 10, 96 A. 565. The state of the law on this question is aptly described in the brief filed amici curiæ, where it is said we "can place the burden of carrying unproductive properties on either income or principal and be fully justified by the authorities. The decided cases and the legal literature represent absolute chaos. Respectable authorities can be found on both sides of the question and even in the same jurisdiction the cases have been decided both ways."

On the question as to whether the trustees can recoup from income in their hands the amount of an over-

payment to the life tenants, the courts in general have decided, as we do, in the affirmative: *Ballantine v. Young*, 74 N. J. Eq. 572, 70 A. 668; *Hammond v. Hammond*, 169 Mass. 82, 47 N. E. 535; *Equitable Trust Co. v. Miller*, 185 N. Y. S. 661, affd. 197 App. Div. 391, 189 N. Y. S. 293, affd. 233 N. Y. 650, 135 N. E. 955.

The decree will be modified as above indicated and as modified it is affirmed. Costs to be paid by the estate.

Mr. Justice DREW dissents.