## Levy's Estate

*H. Crowell Pepper* and *Maurice Heckscher*, for excepants.

*Roy Martin Boyd*, contra.

BOLGER, J., October 7, 1938.—The trustee received inter alia certain lands in Miami and Miami Beach, Fla. At the time of testator's death an appraisal thereof was made and a value of $106,500 placed thereon. The trustee sold the large portion, namely, tracts originally appraised at $86,500, in the winter of 1935-36, at a gross profit of $17,000.

The trustee charged income with the taxes, not only on the sold but also on the unsold portion of the real estate, in the amount of $14,057.93, less $500 income on the real estate, making a net charge on income of $13,-557.93.

The schedule submitted by the trustee presents a breakdown of these items as follows: Taxes on the sold portion $10,476.50, and on the unsold portion $3,581.43.

The exceptions refer solely to the transfer by the auditing judge of the sum of $13,557.93 from principal to income account to reimburse said account for the item of taxes on this unproductive real estate, and the consequent award thereof to the life tenant, Violet I. Levy, daughter of testator.

The evidence further reveals that Violet I. Levy, the life tenant, was familiar with the locality of the real estate, and with the real estate market in Miami, as a re-

sult of which she continually urged the trustee to defer selling, until the sale now accounted for and to which she makes no objection.

Her advice no doubt was wise, as the testimony shows that sale at any time prior to the actual sale would have yielded much less than the appraised value.

Exceptants' contention that the action of the life tenant in urging the trustee not to sell constitutes an estoppel to her claim, we do not regard as sound. The life tenant is not claiming lost income. Certainly the operation of an estoppel would extend no further than to such income. The evidence reveals that she was solicitous, not merely for her own position as life tenant, but also for the interests succeeding her. Furthermore, the record does not show that her action definitely influenced the action of the trustee in retaining the property. The responsibility of retention obviously rested upon the executor-trustee. No lack of prudence or care is imputed to the trustee because of the retention or of the sale.

The action of the auditing judge was based upon the authority of the A. L. I. Restatement of Trusts, comment *m*, section 233, the decision in Develon's Estate, 26 D. & C. 19, 52 Montg. 41, and the adjudication of Judge Ladner of this court in Earley's Estate, no. 1232 of 1926. Comment *m* of section 233 of the Restatement of Trusts reads as follows:

"*m. Unproductive property.* Ordinary current expenses as well as extraordinary expenses incurred in connection with unproductive property are payable out of principal, unless it is otherwise provided by the terms of the trust. Thus, taxes and other carrying charges on unproductive land are payable out of principal, even though the trust estate includes other property from which an income is derived, unless it is otherwise provided by the term of the trust."

Since Judge Klein's adjudication in this case, the final seal of approval of the principles involved in the foregoing decisions has been put upon them by our Supreme

Court in Nirdlinger's Estate, 331 Pa. 135. There it was decided that net rents of properties involved in salvage operations are payable currently to life tenants and that such net rents are to be determined by the return from each individual property, not from the group.

The only possible distinction between that case and ours is that here a sale has yielded a profit. This circumstance is governed by comment *c*, section 241, of the Restatement of Trusts which reads as follows:

"*c. Sale at profit or loss.* The rule stated in this Section is applicable whether the amount received on the sale is greater or less than the value of the property at the time when the trust was created or when the property was acquired by the trustee."

The proposition is also posed that since the will contains a direction to sell, a conversion of the real estate is effected which places the proceeds, as personalty, beyond the pale of the principles involving taxes on unproductive real estate; that taxes on personalty must be borne by the life tenant, even though they be unproductive of income.

The pertinent language of the will is as follows:

"7. All the rest and residue of my estate of whatsoever nature and wheresoever situated I direct my Executor to hold in trust for the following purposes, first disposing of all properties and investments that are not returning suitable interest on their value and reinvest the money obtained in Legal Investments."

Whether this language effected an equitable conversion of the real estate or imposed a duty on the executor-trustee to sell, or whether the language should be construed not to effect an equitable conversion but in spite thereof a duty was nevertheless imposed upon the executor-trustee to sell and to sell immediately, we regard as unimportant.

Judge Holland, in his analysis of the New York cases, points out that the courts of New York regard equitable conversion as an element distinctly indicative of testator's

intention that such taxes should be borne by principal, but he regards such test as unsatisfactory.

The language of the Restatement in dealing with this problem does not restrict the application of the principle to unproductive real estate but to "unproductive property". The failure to distinguish personalty from realty therein is so obvious as to require no further discussion.

Further, the decision of the Supreme Court relating to foreclosed real estate in Nirdlinger's Estate (No. 2), 327 Pa. 171, and the decision above referred to, Nirdlinger's Estate, supra, deal with property which was originally personalty and remained such in the hands of the trustees though converted for a time into real estate.

We regard the facts in the instant case as being entirely within the purview of the authorities and principles cited.

The property was definitely unproductive and the life tenant is the primary object of the testator's bounty, namely, his daughter.

We therefore find that the auditing judge correctly allocated the taxes to principal account.

The exceptions are dismissed and the adjudication is confirmed absolutely.

Ladner, J., did not sit.

VAN DUSEN, P. J., concurring.—Section 233, comment *m*, of the A. L. I. Restatement of Trusts, which authorizes the payment out of principal of the carrying charges of unproductive trust property, should be read in connection with section 240, which requires the sale of such property within a reasonable time. It is the carrying charges for that interval which are to be paid out of principal. Such charges are an expense of liquidation—an administrative expense—the cost of putting the trust property in shape to produce income. So far as sale is delayed beyond a reasonable time, we have another problem, to be solved when we come to it. Claims by life tenants under section 241 of the Restatement of Trusts for

a part of the proceeds of the sale of unproductive property will, when made, present still another problem.

What is a reasonable time, of course, would depend upon circumstances. Trustees should be warned that it is not their duty to delay in order to get a better price. It is their duty to sell when a sale can be made at a fair price, and not to speculate with the trust property. Of course, situations arise in which practically no sale at all can be made, or a sale only at an absurd price. In such cases the reasonable time might be long.

If the matter is dealt with in this way, I think that many of the objections stated by Judge Stearne in his earnest and thoughtful dissenting opinion would disappear. One objection requires special notice. The case in which there is a legal life estate and a legal remainder is different from the case of a trust estate in this, that in the first case there are two separate owners of one piece of property, not an item in a trust fund, and they must manage their property themselves as best they can. If a life tenant does not want to assume carrying charges, he may refuse the burdensome gift. But in the case of a trust estate there is the common representative of both parties who is charged with the duty of conversion, and who, in most cases, has other trust funds to help finance the operation. During the limited period in which the trustee is to make conversion, the payment of carrying charges as an administrative expense is not a violation of the general rule that the life tenant must pay current expenses.

I am not prepared to accept the suggestion that the expense of carrying the property during the reasonable time should depend upon who was benefited by carrying the property. I should suppose that if there was a gain, all parties were benefited, and I would be surprised to meet a case where it would be otherwise. What is to be done if there is a loss? The rule of the Restatement seems to be just and not to require any variation. That rule is found in section 233, comment m. The reasons are those

which I have stated above. The rule of apportionment of the proceeds of property held as security for a debt is found in section 241 of the Restatement. To my mind the reasons for this rule are those which I stated in Dornan's Estate, 19 D. & C. 539, namely, that the security is held for the benefit of principal and income alike, and that the salvage operation is conducted for the proportionate benefit of the two parties in interest. The two matters are separate, and founded on different reasons, and they ought not to be confused.

If there is any difference between unproductive real and personal estate, it may appear when a case involving the latter class comes before us.

It is objected that the rule now adopted upsets what has heretofore been supposed to be the law. We must not hesitate to adopt new law to be applied to old situations, when, in new light, it appears to be best. The Restatement will no doubt introduce us to other doctrines to which we were hitherto strangers. The "salvage operation" method of handling foreclosed mortgages was entirely new in this State, though trust estates had handled foreclosed mortgages for decades.

In the present case, the auditing judge has found that the delay has resulted in a gain which is more than enough to pay the carrying charges. This does not mean that the delay was reasonable. So far as appears, the property could have been sold for a fair price at an earlier date and the trustee ought not to have yielded to the life tenant. But as the trustee has speculated successfully, the funds so raised should bear the expense of the speculation. That is to say, the gain by the delay is the net gain—the increase in price less the expense of waiting.

Therefore, I concur in the conclusion of the majority.

STEARNE, J., dissenting.—I dissent from the general rule, promulgated by the majority, that as between income and principal carrying charges on unproductive property are payable out of principal. This despite com-

ment *m* to section 233 of the Restatement of Trusts and the learned opinion of Holland, P. J., in Develon's Estate, 26 D. & C. 19, which opinion was favorably commented upon in the opinion of the Supreme Court in Nirdlinger's Estate, 331 Pa. 135.

I suggest that the "state of confusion" and "absolute chaos" of the reported cases (there being none in Pennsylvania except Develon's Estate, supra) result from failure to distinguish "apportionment cases" and "defaulted securities liquidation" from the normal case of a life estate and remainder.

The former class of cases has a just and sound reason behind the application of the rule. There appears to be no tenable reason advanced for establishing an unbending general rule that principal solely bears carrying charges on unproductive property. Such a rule tears down principles of property rights which have been established in English and American law for centuries.

The Supreme Court of Pennsylvania unquestionably developed the doctrine of equitable apportionment between life tenant and remainderman. The manifest equity and justness of such a rule has caused it to be adopted in most American jurisdictions, despite the tremendous judicial and accounting labor in its application. No property rights were changed or altered in the slightest degree. From Earp's Appeal, 28 Pa. 368, the life tenant was properly decreed to be entitled to all the income from the trust estate. Under the highly-developed financial corporate structures of today, income which is justly due the life tenant frequently is concealed, remains undisclosed or is not readily apparent. The existence of such income was often overlooked in sales of the stock where accumulated income in surplus enhanced the sale price; where extraordinary stock and cash dividends were paid, and in numerous other situations appearing in the reported cases. In strictly enforcing testator's intention that the life tenant, the primary object of his bounty, should receive what was in fact given to him; the

modern application of this doctrine has been carried to a most scientific and accurate conclusion. The whole inquiry, however, is what is income and what is principal. With the same fine scale of justice, corpus is preserved for the remainderman. Under no guise is corpus ever depleted merely to aid necessitous life tenants. Thus, from Nirdlinger's Estate, 290 Pa. 457, to Neafie's Estate, 325 Pa. 561, the markers of bounds and sign posts of direction have been set, and will of necessity be continued to be fixed as the various corporate situations unfold and develop in the future.

The next and most natural development of the doctrine of apportionment was the apportionment of the proceeds of the sale of defaulted securities acquired at a judicial sale. It is usually met where a mortgage has been foreclosed, the real estate bid in at sheriff's sale by the trustee, and is subsequently sold at a loss. The same rule may apply upon a defaulted bond: Colket's Estate, 20 W. N. C. 71. The basic reason for such apportionment is apparent: On default, and upon subsequent sale at a loss, the life tenant loses income and the remainderman suffers a depreciated remainder. Our brother Van Dusen in an unappealed adjudication in Dornan's Estate, 19 D. & C. 539, recognized the justness of equitable apportionment under such circumstances, and applied the rule in an adjudication. Dornan's Estate, supra, was followed by this court in banc in Nirdlinger's Estate, 26 D. & C. 3. Our court experienced difficulty in arriving at a formula in applying the rule. On appeal the Supreme Court, in 327 Pa. 171, affirmed the principle, but applied the rather complicated algebraic (but wholly scientific) formula of the Restatement (published after our decision) in making the apportionment. Here again attention is directed to the fact that corpus is not given in relief of the life tenant. Upon the contrary, it is obvious that meticulous care is exercised to arrive at a just and equitable conclusion as to what income is reflected in such sal-

vaged proceeds, and with the same due care given to preservation of corpus.

The recent Nirdlinger case, supra, was a refinement of this doctrine. It was an administrative difficulty. The questions involved were whether: (1) pending salvage, the life tenant's income from the foreclosed real estate should be withheld; (2) whether securities were to be treated separately or "hotchpot"; (3) whether the trustee may recoup "overpayments" of income after salvage. The opinion has settled such administrative difficulties and assists fiduciaries in the management and distribution of estates. Attention is specifically directed to the fact that no question of allocation to principal of carrying charges on unproductive real estate was involved.

It is with temerity that I protest against the adoption of a general rule which apparently has received the approval of a majority of the Supreme Court, but which statement it is submitted is clearly obiter dictum. Cave's Estate, 326 Pa. 358, and the subsequent repudiation of statements in Reamer's Estate, 315 Pa. 148 (see Reamer's Estate, 331 Pa. 117), illustrate the danger of placing too great reliance upon obiter dictum irrespective of how forcible and authoritative the language may at first appear.

I protest against extending the doctrine of apportionment beyond any situation except where the inquiry is the ascertainment of income. To lay down a general rule that where property is given to one for life with remainder to another, and such property appears unproductive, the carrying charges must be borne by the remainderman and not the life tenant, is contrary to every ancient and modern established rule of law of property, as well as a violation of the intent of the testator.

Support for the rule which the majority have adopted is found in comment m to section 233 of the Restatement of Trusts. Whatever appears in the Restatement is entitled to the greatest of respect. However, I do not understand that the Restatement was designed to over-

rule what an appellate court has decided. Its function, as its name implies, is an attempt to restate the general principles of the law, and has proven most helpful in clarifying the law generally and its fundamental philosophies. But in the matter now under consideration I eminently prefer to accept the text of the Restatement rather than the comment. The former I believe to be the accurate statement. Section 233(1) of the Restatement provides:

*"(a)* [*the life tenant*] *is entitled to, and only to, the net income. . . .*

*"(2) The net income is ascertained by subtracting expenditures allocable to income from receipts allocable to income."* [Italics supplied.]

The only authority for the adoption of the general rule against which I protest is Develon's Estate, supra. I submit, however, that Judge Holland has confused the doctrine of the apportionment cases. He cites Dornan's Estate, supra, and other cases on apportionment. It follows comment *m* on section 233 of the Restatement literally.

Remembering the multitude of cases in our books as to the duty of life tenants to bear taxes, carrying charges, repairs, to refrain from committing waste, etc., it is most difficult for me to ascertain under what possible theory we should decree that expenses which have always heretofore been held to be payable by life tenants should now be cast upon the remainderman solely because of the existing financial stress. In my view the life tenant should receive, as in the apportionment cases, every item of income justly due him. But it is not just to deplete a remainderman's share solely because of the "plaints of life tenants".

It is true that the basis for the rule of apportionment is the intent of testator. But such intent has hitherto been held to include all the income irrespective of in whatever guise it appears. It was never heretofore decided that in enforcing such testamentary purpose, the prop-

erty of one beneficiary should be taken away from him and given to another. This is manifest from the care which is always exercised in preserving, as nearly as may be, the corpus of the trust. One of the dangers of establishing a general rule of such wide scope is that frequently life tenants are not the chief objects of a testator's bounty. Often life estates are carved out for relatives, friends, servants, etc., with remainders to wife, child, etc. If such a general rule be adopted in many cases, the principal objects of testator's bounty may be made to suffer. I would award exactly what was given and no more. If the true intent of testator was that principal should always carry the expense of unproductive property the testator would have coupled the gift of the life estate with a power to consume principal for payment of such carrying charges.

If such a general rule is adopted in this Commonwealth, many unjust, unequal, and incongruous situations immediately suggest themselves: thus, a legal life estate in real and personal estate is given to a wife with remainder to children. The widow enters the real estate and enters bond for the personal property. Such a widow must properly maintain the realty (A. L. I. Restatement of property, section 129), and upon the widow's death her estate must pay the value of the personal property so acquired, to the children: Gillett's Estate, 130 Pa. Superior Ct. 309, and cases therein cited. But if such a life estate and remainder were embodied in a trust, then under such a general rule, the corpus pays all carrying charges on both real and personal property where it, or any part of it, happens to be unproductive. Upon the widow's death the children take whatever happens to remain. This certainly would be unequal and unjust.

Such a general rule, by its terms, applies to personal property as well as to real estate. Thus, if corporate stock fails to pay dividends, but is subject to county, State or Federal taxes, all such expenses necessarily fall upon the remainderman.

Many other inharmonious situations suggest themselves. But these illustrations will serve to demonstrate the fallacy of the adoption of such general rule. It would appear very strange indeed if a life tenant is permitted to go through the security field of a trust estate and appropriate to himself all the fruits of sound investments, but leave to the remainderman the expense and burden of carrying the unproductive assets. Surely this would be more than testator himself was receiving when he died and passed the net income and remainder to his beneficiaries.

In my opinion the sole situation in which relief should be granted to a life tenant to relieve him from carrying charges on unproductive property, is where the asset is "frozen" and cannot be immediately sold, or where it cannot be disposed of except at a sacrifice. It may be most wise and beneficial to all parties in interest to continue such an asset until a reasonable price is obtained. Under such circumstances, I cannot see the slightest legal objection to applying the rule of apportionment to carrying charges. I would make the apportionment depend upon who was benefited by carrying the property until it is sold. Thus, under the facts of one case all carrying charges might equitably be imposed upon income; in another case all charges could, with perfect equity, be charged against principal, while in a third circumstance such charges should be equitably divided between principal and income. The proper determination, in varying circumstances, should rest in the sound discretion of the auditing judge.

The basis for such conclusion is found in the text of the Restatement of Trusts, section 240, viz.:

"Unproductive Property.

"Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary produces no income or an income substantially less than the current rate of

return on trust investments, and is likely to continue unproductive or under-productive, the trustee is under a duty to the beneficiary entitled to the income to sell such property within a reasonable time."

The fiduciary is required to sell unproductive assets within a reasonable time. If this proves impossible or undesirable, I agree that the carrying charges should not be imposed upon the life tenant any more than they should be charged to the remainderman. I would equitably apportion them as above indicated.

Illustrating the foregoing: Suppose unproductive real estate could be sold within a reasonable time at a sacrifice price of $50,000, but the real estate possesses a fair value of say, $250,000; and assume the real estate is held for some years until it is finally sold for $250,000: Had the real estate been sold for the sacrifice price of $50,000, the life tenant would have immediately commenced to enjoy the income on that amount, the principal of which passes to the remainderman at the termination of the trust. By continuing the unproductive asset until $250,000 is realized, the life tenant looses all income meantime, but this increase and enhanced principal passes to the remainderman when the life estate ends. It follows that the life tenant, if he survives until the real estate is sold, receives income on the enhanced principal. Under such circumstances, I would require a detailed disclosure of all the facts and would apportion the carrying charges according to the extent that the respective parties benefited by the deferred sale.

In the instant case it may well be that the conclusion of the auditing judge in charging to principal all carrying charges upon this unproductive real estate was fair and just. However, the auditing judge followed, and relied solely upon, the comment on the text of the Restatement and Develon's Estate, supra, and did not consider all the facts and circumstances in arriving at his conclusion. He did not attempt to equitably apportion such

charges depending on the circumstances of the case. I would recommit the case for this determination.

Because of the danger of the establishment of an inflexible general rule, in such sweeping terms, that carrying charges on unproductive property must be borne by prinicipal, I record my protest and enter this dissent.

Sinkler, J., concurs in this dissent.