## Levy's Estate.

Argued January 19, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Maurice Heckscher, P. P.,* with him *Wm. C. Ferguson, Jr.,* and *H. Crowell Papper,* for appellants.

*Roy Martin Boyd,* for appellee.

*Raymond M. Remick,* with him *Thomas B. K. Ringe, John Wintersteen* and *J. Charles Murtagh,* for amicus curiæ, under Rule 61.

*R. Sturgis Ingersoll* and *Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Ingersoll,* for Land Title Bank & Trust Co., appellee.

OPINION BY MR. JUSTICE SCHAFFER, March 22, 1939:

Shall carrying charges of unproductive real estate, part of a decedent's estate, be paid out of income or principal? The Orphans' Court differed in opinion on the question, a majority of the judges laying down the general rule that they should be paid out of principal in all cases, whereas the dissenting minority opposed a general rule, and in substance expressed the view that the matter should be adjudicated, in each instance when it arises, according to the equities as between income recipients and those entitled to principal. We agree with the latter view.

By his will, after creating two annuities, Laurance B. Levy gave the balance of income to Violet I. Levy for life, with remainder over, one-half to her children, and one-half to the children of Marc A. Connor, with cross

remainders in the event of the death of either without children, and, in the event of the total failure of children, to his next of kin under the intestate laws. The will directed the trustee to dispose of all properties and investments not returning suitable interest on their value, and to reinvest the money obtained in legal investments.

The decedent left real estate located in Florida, which the trustees held for seven years, when a portion, appraised at $86,500, was sold for $102,500, a gross gain of $16,000. After the payment of commissions and other expenses, there was a net gain of $5,161.45. Between the death of testator and the sale, taxes had been paid from income, amounting to $14,057.93, and the property had produced $500. The life beneficiary demanded reimbursement of the amount taken from income to pay the taxes, and the Orphans' Court awarded her $13,-557.93. From this award, those representing remaindermen appeal.

The precise question of the allocation of carrying charges of unproductive real estate of which a testator died seized has not been heretofore presented to us. *Nirdlinger's Est.*, 331 Pa. 135, 200 A. 656, involved the apportionment of carrying charges, where there was a salvage of collateral, held by the estate, in which both life beneficiary and remaindermen had an interest, the former because interest had not been paid. Nothing said in that opinion was meant to cover such a situation as now before us.

While it is true that, in times past, no contention was made, or if made was not entertained, that carrying charges of unproductive real estate should be paid out of principal, and it was assumed they were payable out of income, a new day has brought about sound reasons for a departure from this practice, and now we are of opinion that in all cases they should not be charged to and be paid by income, but that whether to be so paid, or to be paid out of principal, or divided between the

two, should be determined by considering the equities in each case. The determination of the question is one for the exercise of a sound discretion by the court of first instance and we will review only where there has been a palpable abuse of discretion. The difficulties anticipated in carrying out this program are we think more fanciful than real. The matter can be determined when accounts are filed, embodying the proceeds of the sale of unproductive real estate, or, if greater celerity of disposition is required, the matter can be specially brought before the court.

In the instant case, we cannot determine whether the decision of the majority, that the life tenant should be reimbursed for the taxes paid, was because of the general rule the court adopted, or, because irrespective of the rule, and based upon the equities of the situation, the court would have so decided. This being so, we will return the proceeding to the Orphans' Court for further action, if any be required, in view of this opinion.

Record remitted to Orphans' Court for such further proceedings, if any, as the court may deem proper. Costs to be paid by the estate.