## Doherty's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Joseph Neumann Smith*, for exceptant.

*Charles Myers*, of *Barnes, Dechert, Price & Smith*, contra.

VAN DUSEN, P. J., December 31, 1943.—The trustee foreclosed certain mortgages and bought in the prop-

erties and thereafter managed them for a number of years until they were finally sold. Calculations are submitted for each property separately in accordance with the rule of Nirdlinger's Estate (No. 2), 327 Pa. 171, distributing the proceeds of sale and the net rents between life tenants and remaindermen. Pending the sale the net rents were paid to the life tenants, as was the universal practice before the decision in that case. This practice was sanctioned in the decision in Nirdlinger's Estate, 331 Pa. 135, out of consideration for the life tenant, who ought not to be required to wait for income until the mortgage salvage operation is completed. The latter decision also held that when the operation was completed, and it appeared that the life tenant had received as current rents more than he was entitled to as a result of the whole operation, the excess might be recouped from any other income from the trust fund which might otherwise be due to the life tenant. This is the situation in the present case, and the auditing judge directed that in the preparation of the schedule of distribution excess payments should be so charged. No exceptions have been filed to this conclusion.

The salvage operations lasted a long while, and before they were completed, more than five years ago, an account was filed and adjudicated and the net income then in hand from the foreclosed properties was awarded to the life tenants. It was the opinion of the auditing judge that the income so awarded must be excluded from the Nirdlinger calculations. Exceptions to this conclusion were filed by the guardian and trustee ad litem who represented remaindermen.

The awards of the prior adjudication were correct. The life tenants were entitled to the income. But they necessarily received the money upon a condition attached by the law that they must repay what they received if in the end it appeared that they were overpaid; or at least that they must so repay out of income

from this fund. The allocations of these items in the accounts were therefore not res judicata.

This conclusion is confirmed by our decision in In re Scott's Trust, 40 D. & C. 227. In that case an account had been filed and adjudicated which did not allocate items relating to foreclosed properties as required by the Nirdlinger rule. A petition for review was filed averring that items had been charged against income which should have been charged against principal and that each foreclosed property was not treated by itself. We dismissed the petition, saying that no review was necessary; that an advance to a salvage operation "is impliedly, if not expressly made so, subject to future proper adjustment and return to the fund from which it is taken when the salvage operation has been completed, and the fund brought before the court for distribution". Reference was made to the opinion in Romberger's Estate, 39 D. & C. 604. In that case objection was made by the life tenant to the allocation to income of certain expenses on foreclosed property whereby his income was materially reduced. Judge Stearne said (p. 612) :

"Until the real estate is actually sold, and a fund is before the court for distribution, there exists no completed salvage operation. Under such circumstances, decisions relating to questions of allocation as between income and principal are mostly premature. This accounting is therefore solely to verify actual receipts and disbursements of such items. When the salvage operation is finally completed, and upon an accounting when there is a fund before the court for distribution, the parties may then appear and make application for equitable allocation of the funds as between income and principal: Nirdlinger's Estate (No. 2), 327 Pa. 171. Confirmation of the present accounts, as respects such items, merely approves the actual receipts and expenditures, and is not intended to preclude the parties

from subsequently having the fund allocated as above indicated. This right is expressly reserved to them. See Bullitt's Estate, 308 Pa. 413, Neafie's Estate, 325 Pa. 561, and Mark's Estate, 2598 of 1932, opinion of Klein, J. (not reported)."

The recent decision in Crozer's Estate, 346 Pa. 446, is urged upon us in the argument against the exceptions. The opinion is by Mr. Justice Stearne who, when a member of this court, wrote the opinion in Romberger's Estate from which quotation has just been made. In Crozer's Estate there was a prior account within five years in which there appeared the result of *completed* sales of real estate, both that which had been acquired by foreclosure and that which had been owned by decedent. The proceeds of these sales were debited to principal. The court held that this adjudication of *completed* transactions could not be altered without at least a petition for review. It is apparent that the prior account afforded an opportunity to raise the question. In the present case the prior account did not afford such an opportunity.

The exceptions are sustained.

LADNER, concurring.—I agree in the result but do not agree with either the majority opinion nor the auditing judge in the statement that where, upon completion of a salvage operation and application of the Nirdlinger formula (331 Pa. 135), the amount of net rents paid a life tenant is shown to be in excess of income share of the salvage proceeds, such excess can be recouped out of the "other income". Such ruling seems to me to be inconsistent with the doctrine favoring the life tenant, as first laid down in the Nirdlinger case above mentioned which, at page 139, directs "that net rents, based upon the return from each individual property, shall be distributed to life tenants".

What Judge Stearne, whose adjudication was approved by a majority of this court when the above

Nirdlinger case was before us (34 D. & C. 36, 37), said with regard to the right to recoup such excess from other income followed logically his ruling that all investments should be treated as a whole and not separately as the Supreme Court later ruled.

I shall refrain from further discussion of the matter because no exception was taken to the auditing judge's ruling in this regard, hence what has been said on the subject in the majority opinion is obiter dictum.

BOLGER, J., dissenting.—Can principal presently recoup what is now discovered to be excess net income distributed to life tenants and accounted for and approved in a prior adjudication more than five years ago—before the adoption of the Nirdlinger Estate principle of apportionment? In affirmation of my adjudication certain points should be emphasized to strengthen its conclusion.

The five-year rule so rigorously employed in Stetson's Estate, 305 Pa. 62, and Elkins' Estate, 325 Pa. 373, and related cases, and which was relied upon in the adjudication, is a statute of repose. It applies and makes final all matters, whether of law or of fact and whether correctly or incorrectly decided, in the adjudication and thereafter confirmed absolutely.

The disputed items in the 1936 accounting in the instant estate were matters of distribution to the life tenants. They were so set up in the account and approved by the adjudication albeit under a different theory of law than is now applied—the doctrine of hotchpot. All income debits and credits alike from whatever source were accounted for collectively. No segregation was made of income pertaining to property in the course of salvage. It must follow, therefore, that the adjudication was in error as a matter of law when, in accordance with the requests of the parties, it approved the account not merely as to items of charge and discharge, but also in *distribution*. However much it

was in error, no fraud having been alleged, it is now too late to correct the error. It is to be understood that in using the word "distribution" it is intended to convey the idea of finality—without reservation—such as subject to possible set-off against future income.

We cannot now pass upon the equities that existed in 1936 and which persuaded the parties to approve the account. It is possible that in that accounting other considerations might have been brought to the attention of the parties which would have balanced out this present claim. Among other things, I refer to possible loss of income by the life tenants in other foreclosed real estate where the salvage operation had been completed, but due to the fact that the Nirdlinger decision had not been handed down no claim was made by the life tenants. To extract from the previous accounting only the stated debits to income without obtaining a complete picture of the estate at the time would be grossly unjust. In short, the fair and just way to revive consideration of this matter is by review. Since this latter procedure is concededly irregular because of the application of the five-year rule (Fiduciaries Act of June 7, 1917, P. L. 447, sec. 48), consideration of the entries in dispute should likewise be declared irregular.

In re Scott's Trust, 40 D. & C. 227, and Romberger's Estate, 39 D. & C. 604, cited in the majority opinion, are clearly distinguishable. In the former, the five-year rule is not involved; in the latter, requests for allocations of income were declared premature because the salvage period was not concluded and there was no fund, therefore, before the court for distribution.

The adjudication is sound not only as a matter of law but as one of policy. It is a step toward the simplification of a principle of law which has become burdensome at times in the ramifications of its application.

The exceptions should, therefore, be dismissed.