COMMISSIONER OF INTERNAL REVE-
NUE v. LEWIS (two cases).

Nos. 8469, 8470.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 9, 1943.

Decided Feb. 3, 1944.

**222**

Helen Goodner, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Helen R. Carloss, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Otto Wolff, Jr., of Philadelphia, Pa., for respondents.

Before JONES, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

JONES, Circuit Judge.

The question raised by the pending petitions for review is whether income retained by trustees in order to pay carrying charges upon unproductive trust real estate constitutes an allowable deduction under Sec. 162 (b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 893, in ascertaining the income taxable to the beneficiaries as distributable.

The Commissioner, holding that the carrying charges were properly chargeable to corpus, accordingly determined deficiencies in the taxes due by the respondent life tenants for the taxable years in question by augmenting the income distributable to them by the amount of their respective interests in the income so retained by the trustees. On petitions by the taxpayers for redetermination of the several deficiencies, the Tax Court, 1 T.C.

449, reversed the ruling of the Commissioner. The facts, as stipulated by the parties and as found by the Tax Court, disclose the following material circumstances.

The respondents, John Frederick Lewis, Jr., and Ada Haeseler Lewis, his wife, are the life beneficiaries respectively of one-third and one-sixth of the income from an inter vivos trust created by Anne H. R. Baker Lewis, of Philadelphia, Pennsylvania, on December 23, 1935. Incidentally, there are two other life beneficiaries (Alfred G. Baker Lewis and his wife) who, likewise, are entitled respectively to one-third and one-sixth of the trust income. But the question presented arises only in connection with the tax liability of the respondents above named. The relationship of the settlor to the life beneficiaries, which the record does not disclose, is presently immaterial.

For the purposes of the trust, the settlor granted and conveyed to John Frederick Lewis, Jr., Alfred G. Baker Lewis (two of the life beneficiaries), and S. Weir Lewis, as trustees, stocks, bonds, mortgages and certain parcels of real estate with improvements thereon. Among the real estate so conveyed were sixteen farms in Chester County, Pennsylvania, a fishing club in New Jersey and five renting properties in Philadelphia. For each of the taxable years in question (1936 and 1937), the income from the real estate above mentioned was insufficient to cover the taxes, repairs, expenses and depreciation of the properties. In computing the net income from the trust for the years in question the trustees included in their deductions from the gross income of the trust the carrying charges on the real estate and thus arrived at the net income distributable to the life tenants. The respondents so reported their trust income interests in their returns for the respective tax years.

No question is raised as to the amount or the propriety of the allowances taken by the trustees for depreciation of the realty. Under the pleadings and the stipulation filed, the depreciation was included with the taxes and other expenses of the trust real estate in "the general category of 'carrying charges'". As stated by the Tax Court, the question, so limited and defined, is whether or not, under the applicable rule of trust accounting and the terms and intent of the trust indenture, the car-

rying charges on the unproductive trust real estate are payable out of trust income generally, that is, from income derived from other property in the trust.[1]

By the trust indenture the trustees were directed, inter alia,—

"* * * to invest, and keep invested, the principal of said trust estate, to collect and receive the income, issues and profits thereof, and *after the deduction of all lawful and proper costs, charges, taxes and expenses incident to the care and management of the trust,* then in trust: "(a) To pay * * * the net income * * *" to the life beneficiaries, etc. (Emphasis supplied.)

The trustees were also empowered and authorized, inter alia, by the trust indenture "to invest said trust estate in such securities as they may deem prudent, *having regard to the security of the investment, rather than to the rate of income,* and without restricting them to so-called legal investments * * *." (Emphasis supplied.)

Without specifying in detail the remainder interests in the income and corpus of the trust after the deaths of the life tenants, it is sufficient to say that who of the contingent remaindermen (children or issue of deceased children of the male life beneficiaries in the first instance, and certain charities in remainder over upon failure of such children or issue) will ultimately take the property cannot be determined until the deaths of the life beneficiaries and twenty-one years thereafter. The life beneficiaries have not questioned the trustees' computation of the distributable trust income for the years in question. No account of the trust for the years here involved has yet been filed by the trustees with the court having jurisdiction of such accounts.

■ Under Sec. 162 of the Revenue Act of 1936, the net income of an estate or trust is to be computed in the same manner and on the same basis as in the case of an individual except that certain additional deductions are allowable. Thus subsection (b) of Sec. 162 provides for the deduction of "the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not." In construing a somewhat similar provision in Sec. 219 (d) of the Revenue Act of 1921, the Supreme Court said, in Freuler v. Helvering, 291 U.S. 35, 42, 54 S.Ct. 308, 311, 78 L.Ed. 634, that,—"The test of taxability to the beneficiary is not receipt of income, but the present right to receive it." It, therefore, becomes pertinent to determine whether the beneficiaries had a present right to receive the income retained by the trustees. If the carrying charges were properly payable from corpus, then the income used by the trustees for that purpose was, in contemplation of law, distributable to the beneficiaries and, consequently, taxable to them as such. Compare Caldwell v. United States, 7 Cir., 102 F.2d 607, 611; and Ardenghi v. Commissioner, 2 Cir., 100 F.2d 406, 407, certiorari denied 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1501.

■ Whether the carrying charges were payable from corpus or from income is to be determined according to local law. Blair v. Commissioner, 300 U.S. 5, 10, 57 S. Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, supra, 291 U.S. at pages 44, 45, 54 S. Ct. 308, 78 L.Ed. 634; Irish v. Commissioner, 3 Cir., 129 F.2d 468, 471. The local law here applicable is the law of Pennsylvania. As to this all parties are agreed and the Tax Court dealt with the problem on that basis. The petitioner's only contention in such regard is that the Tax Court erred in its application of the Pennsylvania rule.

■ For many years it had gone unquestioned in Pennsylvania that the carrying charges of unproductive trust real estate were payable from trust income and were not chargeable to principal. But in Levy's Estate, 333 Pa. 440, 442, 5 A.2d 98, 99, 1939, the Supreme Court of Pennsylvania, after adverting to the long es-

---

[1] In his brief, the present petitioner states in footnote 2, p. 10, that,—

"The pleadings before the Tax Court (Tr. 3-4, Nos. 8469 and 8470) did not raise any issue that depreciation should be treated separately from other carrying charges, nor did the stipulation of facts present such an issue. In the circumstances the Tax Court held that depreciation should be included in the general category of 'carrying charges'. Accordingly, this appeal involves no question of the apportionment of depreciation between beneficiaries and trustee under Section 23 (*l*) of the Revenue Act of 1936 [26 U.S.C.A. Int.Rev.Code, § 23 (*l*)]."

tablished practice said that "a new day has brought about sound reasons for a departure from this practice, and \* \* \* that whether [carrying charges are] to be so paid [i.e. from income], or to be paid out of principal, or divided between the two, *should be determined by considering the equities in each case.*" (Emphasis supplied.)

The question in Levy's Estate, just as here, was whether the carrying charges on unproductive real estate which was part of the original trust properties were rightly payable out of income or principal. Shortly before the decision in Levy's Estate a distinction had been drawn between trust properties acquired by fiduciaries through foreclosure of trust mortgages and "decedent owned" trust real estate, i.e. property that had come into the trust from the testator's estate. Thus in Nirdlinger's Estate, 331 Pa. 135, 200 A. 656, 657, 116 A.L.R. 1350, 1938, it had been held that the net rents from productive real estate acquired by the trust through mortgage foreclosure belonged to the life tenant but that the carrying charges on unproductive real estate, likewise so acquired, were to be advanced from principal and to be recouped from the proceeds received for the property upon a sale thereof. The reason for the distinction thus drawn lay in the desirability of making certain, so far as possible, that the income payable to the primary object of a testator's bounty (a life tenant) should suffer least from the vicissitudes incident to investments in "trying financial times." The Court's expressed thought was (page 139 of 331 Pa., page 657 of 200 A.) that "life tenants \* \* \* [should] be favored when they can be." So, to that end, the problem in Nirdlinger's Estate was "worked out in the most practical and equitable way."

Later, in Crozer's Estate, 346 Pa. 446, 31 A.2d 147, 148, 1943, decided since the Tax Court's decision in the instant matter, the Pennsylvania Supreme Court again stated that where "the real estate is 'decedent owned', and unproductive, an entirely different rule prevails" and reaffirmed that, in such circumstances, the rule of Levy's Estate which looks to "the equities" of the case is applicable in de-

termining whether carrying charges are payable from income or corpus. Here, the unproductive real estate is "settlor owned", which means the same thing as "decedent owned". Both terms denote the source of trust title to real estate. Nor is any distinction to be drawn in the case of an inter vivos trust because of the fact that the Pennsylvania cases cited involved testamentary trusts. The present petitioner concedes as much.[2] The court in Pennsylvania (viz., the Orphans' Court), having jurisdiction in the first instance of testamentary trusts, also has jurisdiction of the accounts of trustees of inter vivos trusts. Act of June 7, 1917, P.L. 363, § 9 [n], as amended by the Act of June 26, 1931, P.L. 1384, § 1, 20 P.S. § 2253a.

It may be taken as settled in Pennsylvania that the rule applicable to circumstances such as are here present is the rule laid down in Levy's Estate. Such is the rule which the Tax Court followed and, upon looking at the facts of the case, found no equities requiring that the corpus be made subject to the carrying charges in order to benefit the life tenants. On the contrary, the Tax Court found an intent on the part of the settlor that the maintenance of the trust res (unimpaired by current taxes or expenses) rather than the augmentation of income for the life beneficiaries was the principle by which the trustees should be guided in their administration of the trust. Accordingly the Tax Court concluded that the carrying charges on the unproductive trust real estate were to be paid from the income of the trust.

The petitioner points to the fact that in Crozer's Estate, supra, it was said that,— "The exercise of [the court's] discretion must be upon the *facts and circumstances relating to each separate piece of real estate.*" That requirement, however, becomes pertinent only when the rule ordinarily applicable to carrying charges on unproductive real estate is to be relaxed in order to improve the life tenants' income. It is not germane where, as here, no special equities in favor of the life tenants have been found.

■■ The Tax Court having followed the correct rule of law, it is not for us to disturb its conclusions based upon its rele-

[2] In the brief for the instant petitioner, p. 12, footnote 4, it is stated that,—
"The [Pennsylvania Supreme] Court so far has dealt only with the problem of testamentary trusts, but no reason suggests itself as to why the same principles would not apply to inter vivos trusts as well."

vant findings. Dobson v. Commissioner, 64 S.Ct. 239. Nor would there be any occasion for us to do so even if it were within our power to make findings independently. The directions of the settlor that the trustees pay the income to the life beneficiaries "after the deduction of all lawful and proper costs, charges, taxes and expenses incident to the care and management of the trust," and her further injunction that, in the matter of trust investments, the trustees should have "regard to the security of the investment, rather than to the rate of income", well support the intent which the Tax Court derived from the trust indenture.

■ The Commissioner contends that the respondents have failed to overcome the presumptive correctness of his determination because the question as to the carrying charges must be finally determined by a court of competent jurisdiction in Pennsylvania and that, until that is done, the authoritative answer must remain uncertain. As support for this contention, the Commissioner relies on the court's statement in Levy's Estate, supra, that,—"The determination of the question [whether carrying charges should be paid from income or principal] is one for the exercise of a sound discretion by the court of first instance and we will review only where there has been a palpable abuse of discretion." True enough, the respective property rights of the persons interested beneficially in the trust and the trustees' accountings with respect thereto cannot be conclusively adjudicated except by the state court having jurisdiction thereof. But the fact that no such adjudication has yet been had does not exclude a federal tribunal from ascertaining and applying the applicable local law when the occasion so to do arises in a matter properly before it. In speaking of the responsibility which Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, cast upon federal courts, of deciding questions of state law in *diversity* cases, Chief Justice Stone recently said in Meredith v. City of Winter Haven, 320 U.S. 228, 64 S. Ct. 7, 12, that "this Court has not hesitated to decide questions of state law when necessary for the disposition of a case brought to it for decision, although the highest court of the state had not answered them, the answers were difficult, and the character of the answers which the highest

state courts might ultimately give remained uncertain." The duty of a federal tribunal can be no less where, as in the present instance, the pertinent question of local law is directly involved and is duly raised by the pleadings and the material facts as stipulated by the parties.

■ Were we to accept the Commissioner's plea that his determination is to be sustained under the circumstances present because of its presumptive validity, the ensuing result would automatically mean that it is the Commissioner's right to adjudicate a legal question which, at the same time, he denies the Tax Court the right relevantly to decide. And he would do this even without notice to or hearing of the remaindermen whose interests in the trust he would thus directly impair and among whom, as may be inferred from a reading of the indenture, may possibly be non sui juris persons or even children yet unborn. The effect of such a situation would be to force the filing of a trustees' account in the local court, with its attendant expense if it is to be effective as to all interests, every time a federal tax question depends on a matter of local law.

Not only do we think that it was within the Tax Court's province to decide the question of local law but it is our further opinion that a Pennsylvania court of appropriate jurisdiction, having the question to decide, would decide it in the same way that the Tax Court has done. It will be borne in mind that carrying charges on unproductive real estate are, under Pennsylvania law, ordinarily payable from income (it being only where there are equities present in favor of the life tenant, such as the need for insuring that the life tenant be not "required to starve" in troubled times "in order that remaindermen may ultimately feast", that the rule is relaxed) and, as heretofore pointed out, it was the settlor's expressed intention that the life tenants should endure a reduction in income rather than that the remaindermen should suffer by impairment of principal. These circumstances, we believe, would cause a Pennsylvania court of appropriate jurisdiction to approve without question the trustees' payment of the carrying charges out of income. Such a result would be all the more certain where sui juris life tenants, such as the respondents, having knowledge of the trustees' action, as they have here (one of the

respondents even being a trustee), make no objection to the trustees' action. Nor does their failure so to object amount to a giving up by them of income to which they, as life tenants, have a right. It merely serves to confirm the propriety of the action which the court would otherwise take in keeping with the settlor's expressed intent. In fact, had the trustees in this case paid the carrying charges out of principal, it is our opinion that, upon objection thereto by the remaindermen, the state court would for the reasons already given surcharge the income account and credit the corpus account accordingly.

The decision of the Tax Court is affirmed.