## Doherty's Estate

Before Van Dusen, P. J., and Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Charles Myers*, of *Barnes, Dechert, Price & Smith*, for exceptants.

*Joseph Neumann Smith*, contra.

HUNTER, J., April 6, 1945.—These exceptions question the ruling of this court in McDowell's Estate, 52

D. & C. 258, which the auditing judge applied to the instant case, that the trustee may recoup from life tenants net rents advanced to them in excess of the amounts found to be due at the completion of a salvage operation upon a foreclosed mortgage. A majority of the court was of the opinion that the question had been expressly ruled by the Supreme Court in Nirdlinger's Estate, 331 Pa. 135. Judge Ladner thought not. The respective views of the judges of this court are set forth in the opinion and concurring opinions there filed, and need not be repeated.

The exceptants, however, present for our consideration exceptions and arguments against recoupment which were not heard in McDowell's Estate, supra, nor at the previous argument in the instant case reported in 49 D. & C. 453. They contend that there should be no apportionment or recoupment unless the net income during salvage differed substantially from the current rate of return on trust investments.

The rule of the A. L. I. Restatement of Trusts §241, cited in the second Nirdlinger decision, 327 Pa. 171, is as follows:

"(1) Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is property which the trustee is under a duty to sell, and *which produces no income or an income substantially less than the current rate of return on trust investments*, or which is wasting property or produces an income substantially more than the current rate of return on trust investments, and the trustee does not immediately sell the property, the trustee should make an apportionment of the proceeds of the sale when made, as stated in Subsection (2). [Italics supplied.]

"(2) The net proceeds received from the sale of the property are apportioned by ascertaining the sum

which with interest thereon at the current rate of return on trust investments from the day when the duty to sell arose to the day of the sale would equal the net proceeds; and the sum so ascertained is to be treated as principal, and the residue of the net proceeds as income.

"(3) The net proceeds are determined by adding to the net sale price the net income received or deducting therefrom the net loss incurred in carrying the property prior to the sale."

The exceptants list nine properties. In five, rents were overpaid to the life tenants in a total of $7,212.73—in four, they were underpaid $1,898.77—which results in a net amount to be recouped from life tenants $5,313.96. Rents during salvage yielded an average annual rate of income on the respective investments in the following scale for the nine properties: 0.%, 2.2%, 2.4%, 2.5%, 2.5%, 4.2%, 4.38%, 5.6%, and 6.7%. On the basis of the four percent rate adopted in Nirdlinger's Estate, supra, four of the properties earned more than the current rate of return on trust investments, and the others considerably less.

We have no present definition of what is a "substantial" return. The "Uniform Principal and Income Act" now before the legislature (Senate Bill 53) defines unproductive property as that "which for more than a year and until disposed of . . . has not produced an average net income of at least one per centum".

The exceptants argue that there is no fixed rate of four percent to be used in determining whether a property produces more or less than the current rate of return on trust investments. They suggest that the current rate may vary from two to seven percent, and that the only property to which the Nirdlinger doctrine is to be applied is the property which earned nothing. In such case the life tenants would not have to refund

$7,212.73 rents which they have already received from five of the properties, nor would they be entitled to the benefits of apportionment as to three others in which they were underpaid $1,007.14.

There is no indication in the Nirdlinger decision that the Supreme Court adopted clause (1) of §241 of the Restatement, and its definition of unproductive property. The subject of that decision was defaulted mortgages. Clause (1) of the Restatement covers also decedent-owned real estate stocks, bonds, and any other property without substantial return; also wasting property, and hazardous and speculative investments yielding high return.

Clause (1) was certainly not adopted as to decedent-owned real estate, because immediately following the Nirdlinger decision came Levy's Estate, 333 Pa. 440, enunciating a different rule as to such real estate and authorizing the payment of carrying charges out of principal only according to the equities of each particular case, and making no apportionment of proceeds for the benefit of life tenants. The court said (p. 442): "Nothing said in that opinion [Nirdlinger's Estate] was meant to cover such a situation as now before us."

We must conclude that the Nirdlinger decision adopted only the formula of apportionment contained in clauses (2) and (3) of the Restatement and applied it to but one class of unproductive property—defaulted mortgages.

We are further of the opinion that no distinction was intended to be made in the Nirdlinger case between salvage operations which produced net rents equal to the current return on trust investments, and those which produced substantially less. There was no suggestion of an inquiry to ascertain whether there had been adequate rents, and all 42 properties were treated alike and apportionment directed.

Furthermore, as pointed out by the auditing judge, the Supreme Court in the second Nirdlinger decision

made certain refinements in the conduct of a salvage operation, not found in the Restatement, to wit: (1) Foreclosed properties must be segregated and administered singly throughout the salvage period; (2) net rents must be paid to life tenants when and as received, and deficits met out of principal; and (3) excess net rents paid to life tenants must be recouped.

He concluded "that, in large part, our Pennsylvania rules with respect to handling of properties during the course of salvage and distribution of net rents during that period are peculiarly our own".

We feel that if a change is to be made in the generally-accepted practice of apportioning all salvaged mortgages, and if productive property is to be taken out of the rule of apportionment, it should be sanctioned by the Supreme Court.

The exceptions are dismissed and the adjudication is confirmed absolutely.

LADNER, J., dissenting.—This case aptly illustrates why it is unjust to a life tenant to compel recoupment from her other income instead of limiting the recoupment to the share apportionable under the Nirdlinger Estate formula. Here the salvage operations involved were protracted as long as 11 years. The poor market and low prices were no doubt caused by the depression but that merely emphasises the fact that the reason for the long retention was the hope of ultimate restoration of principal. In other words, it was for the benefit of the remaindermen that the salvage operations were protracted. Why should not then principal bear the loss? If life tenants are compelled to restore the so-called excess of income over current return out of their other income, they would be far better off if the trustees were compelled to sell foreclosed properties at once and to invest the proceeds thereof.

I am decidedly not in accord with the majority and I feel strongly the correct principle is that recoupment

against a life tenant must be limited to the share of proceeds to which the life tenant would be entitled at the completion of the salvage operation. Any other rule inflicts an unjustifiable hardship on the first and usually the prime object of the testator's bounty. In my concurring opinion in McDowell's Estate, 52 D. & C. 258, I have set forth the reason and authority for my conclusion, and therefore need not repeat here what I there said. I merely add that Judge Sinkler came to the same conclusion in Bassett's Estate, July term, 1908, no. 156, in his adjudication of October 19, 1942, to which no exceptions were filed.

I would sustain the exceptions.