## Haugh's Estate

*Francis S. Cantrell, Jr.*, for exceptants.

*R. W. Archbald, Jr.*, for trustee ad litem.

STEARNE, J., May 13, 1938.—The exceptions raise a legal question as to the proper allotment of the proceeds of three "mortgage certificates" involved in the liquidation of a closed bank.

The trust was created by testator for the benefit of his daughter for life, who still survives, with remainders therefore unnecessary to recite. The Manayunk Trust Company was appointed testamentary trustee. There was no balance of personal property shown by the executors' account. The trust res was derived from the sale of real estate. The principal of the trust amounts to $20,-130.43. The account reveals the purchase by the trustee of the three mortgage certificates: No. 393 for $1,086.87, no. 467 for $9,146.31, and no. 496 for $102.65, a total of $10,334.83. Thus, of the $20,130.43 principal, $10,334.83 was invested in the trust certificates.

On October 13, 1931, the Secretary of Banking took possession of the trust company for the purpose of liquidation. Payments on account of the certificates were made by the Secretary of Banking to the closed trust company as trustee herein. As shown by the account, one was for 47.50 percent, another for 22.50 percent, and a third for 12.18 percent, a total of 82.18 percent.

It was testified before the auditing judge that the first payment of 47.50 percent was out of the general funds of the bank, whereas the other payments of 22.50 percent and 12.18 percent were derived from the proceeds of the mortgages which were assigned as collateral for the payment of the mortgage certificates. The 12.18 percent payment was derived from payments of mortgage interest from the mortgage pool. It was at first debited to income on the books of the trustee. In consequence of the decision of the court of common pleas hereinafter referred to, the Secretary of Banking treated this dividend in its account as a payment of principal, and so debited it, together with other payments in the principal account, entering them for information only, carrying them short. Meantime certain distribution of income was being made to the life tenant by the trustee. From July 31, 1931, to July 29, 1936, $1,391.79 was distributed as income in varying amounts from $5 to $75. Just what part of the 12.18 per-

cent liquidation dividend was included does not appear, but apparently there has been an overpayment of income.

As we understand this most unsatisfactory record, the life tenant protests that whatever was paid to her as income was a voluntary payment by the trustee, and the status of such payment cannot thereafter be questioned. Counsel for the life tenant, the exceptant, relies upon Nauman's Estate, 110 Pa. Superior Ct. 55. He maintains that as the payments were made as income payments, the life tenant may so regard them, and that the trustee is foreclosed from recouping such payments should it subsequently develop that the payments were, in fact, principal. We do not regard Nauman's Estate, supra, as deciding such a broad principle. In Nauman's Estate a corporate fiduciary remitted quarterly to the life tenant without regard to whether the income was in fact collected. In one instance it made a quarterly advance without previously collecting the income represented by such payment. The bank closed before it collected such advancement. In the settlement of the bank's affairs, the Secretary of Banking attempted to recoup such overpayment by charging it against the individual deposit account of the life tenant, which was maintained in the closed bank. Such right was denied by the Superior Court. The court said, however, and this is particularly applicable to the present situation (p. 59) :

"Of course, in good conscience, when and if the advanced interest is collected, the active trustee [succeeding trustee] should be entitled to retain all or that portion necessary to reimburse itself."

The status of the present mortgage certificates was defined by Judge Lamberton in In re Manyunk Trust Co., 17 D. & C. 19, and In re Manayunk Trust Co. (No. 2), 21 D. & C. 405. The trust company set up a mortgage pool, to which were assigned certain mortgages. The corporate trustee thereafter transferred to its commercial department cash from this trust estate, and received therefor the mortgage certificates in the amounts above

recited. These certificates are, in form, a declaration by the trust company that, as trustee, it deposited with itself (in its corporate capacity) the amounts named in the respective certificates, and that as security therefor the bank, as a corporation, agreed to pay certain fixed interest, and certified that it had set apart specified mortgages as collateral for such deposits. The court ruled that the relation created by these certificates is that of banker and depositor, and that the mortgage pool is merely security for the repayment of the deposits. It necessarily followed that, in liquidation of the bank, no interest is payable upon the trust certificates after the insolvency of the trust company on October 13, 1931.

Unquestionably, the investments were improper: Tracy et al. v. Central Trust Co., 327 Pa. 77. However, the trust company is insolvent and the question of surcharge therefore becomes academic. Indeed, no surcharge is requested and none was made.

In this situation, the three trust certificates must be regarded as any other defaulted security. Upon completion of the salvage operation, the proceeds derived therefrom must be allocated between income and principal on the formula of Nirdlinger's Estate (No. 2), 327 Pa. 171. However, the mortgage pool is still unliquidated. No income is being received from the certificates. Final dividends have not as yet been paid. The salvage operation has not been completed. Until such salvage is fully finished, necessarily there can be no application and no basis for the application of the Nirdlinger formula, and the ascertainment of the amounts respectively due income and principal.

The life tenant should receive the income from the entire estate, including the income, if any, on the funds received on account of the three defaulted securities, pending the salvage operation. When such salvage operation is completed, should there appear to be any overpayment on account of income, the trustee may recoup itself concerning such overpayment from future income: See

opinion of orphans' court in Nirdlinger's Estate (Judge Van Dusen dissenting), concerning the approval of a schedule of distribution (filed April 29, 1938, and not yet reported).

Because of the poorly stated account, which, under the testimony, manifestly does not reflect the true situation as shown on the books of the corporation, we could well recommit the record to the auditing judge for the purpose of securing a restated account, and of having the accountant and the interested parties place the record in proper form. However, as the items of charge and discharge are stated in the account, there would seem to be no useful purpose served by such action. Accordingly, we direct that a full, detailed, and comprehensive schedule of distribution be prepared, showing, as here indicated, the awards of both principal and income, all payments to the life tenant, both from the proceeds of the mortgage trust certificates and the process of salvage, and from the other portions of the estate, as well as all sums of money or assets directed to be retained and set aside to await complete salvage, which schedule, when duly certified as to its correctness by the accountant and the other parties in interest, or their counsel, shall be presented to the auditing judge for his approval.

Under decree of this court dated December 9, 1937, the present accountant as trustee was discharged from its office as such, conditioned upon the absolute confirmation of the adjudication, and a substituted trustee was appointed. We direct that, in the circumstances of this case, such discharge of the present accountant shall not become absolute until the present account is confirmed absolutely, and until its future accounting concerning the liquidation and salvage of the securities herein referred to shall become absolute. Leave is granted, at that time, to submit a decree for absolute discharge.

Distribution is directed in accordance with this opinion, and the adjudication as modified is confirmed absolutely; all exceptions thereto are dismissed pro forma.

VAN DUSEN, P. J., dissenting.—The trust fund was invested in obligations secured by an interest in a mortgage pool. The management and liquidation of the mortgage pool is in hands other than those of the trustee. The cash which has been received on account of the investment is not subject to the risks or the expenses of the further liquidation of the mortgage pool. Though the trust fund may never get more, it can never get less. Under these circumstances the money received should at once be apportioned and distributed on the principle of Nirdlinger's Estate (No. 2), 327 Pa. 171. I see no reason to do otherwise; and consideration for the life tenant ought to lead us to make a distribution just as soon as it can be done with safety. We have just held in Nirdlinger's Estate that current rents should be paid to the life tenant on account of income even though it is uncertain whether eventually income to that amount will be realized. In the present case we are sure that a certain amount has been realized.