## Cope's Trust

Before Stearne, Sinkler, Klein, Bolger and Ladner, JJ.

*Henry D. O'Connor*, for exceptant.

*William M. Boenning*, contra.

STEARNE, J., April 12, 1940.—The exceptions raise a question of apportionment as between income and principal, concerning carrying charges on unproductive real estate. The fiduciary acquired the real estate by deed, in lieu of foreclosure of a purchase money mortgage. Should the real estate be regarded, in the circumstances, as similar to "decedent owned" unproductive real estate, then the principles of Levy's Estate, 333 Pa. 440, apply. But if the transaction represents a liquidation of a foreclosed mortgage, then the rules and the formula of Nirdlinger's Estate, 331 Pa. 135, are applicable.

The facts may briefly be summarized as follows: In accordance with the terms of an agreement in settlement

of a will contest, the executor of the estate of Caleb Cope (together with Caleb F. Cope and Porter F. Cope) on June 10, 1898, conveyed to the present accountant, as trustee, premises 429 Market Street, Philadelphia. Under the terms of the trust, the income was payable to Caleb F. Cope and Porter F. Cope (both of whom survive) in the proportions as therein stipulated, with remainders to possible widows or issue of the life tenants, and in default, to the next of kin of the father of the life tenants.

The trustee paid the net income derived from the real estate to the life tenants until April 1, 1921. On that date the trustee sold the real estate for $125,000 and took back a purchase money amortizing mortgage for $115,000, together with a collateral bond guaranteeing the payment thereof. The principal of the mortgage was thereafter reduced to $99,500. The mortgage became in default. In August 1931, the trustee accepted a deed for the real estate from the owner, *in lieu of foreclosure*. The trustee received in addition a cash payment of $22,500 from the individuals liable on the collateral bond, and received payment for all delinquent taxes, water rent, and interest on the mortgage.

The cash derived from the sale of the real estate on its sale in 1921 was invested by the trustee. The cash payments subsequently received on account of the principal of the mortgage were likewise invested, as was the $22,500 received from the satisfaction of the collateral bond. At the audit the trustee substituted $23,300 in cash for certain of the investments claimed to have been improperly made and paid into the trust estate $7,210.90 representing interest lost to the trust because of the replaced investments.

The real estate has not been self-sustaining since title was acquired by the trustee in 1931.

The auditing judge ruled that all income should be regarded as placed in a common fund, and all expenses paid therefrom, and that only the net income from this

fund should be paid to the life tenants. Because of this ruling the life tenants were awarded but $85.94, which sum was directed to be retained by the accountant to provide for possible future deficits in carrying charges on the real estate. We are unable to subscribe to this result.

Should this unproductive real estate be regarded as similar to "decedent owned" real estate, governed by the rules of Levy's Estate, supra, the life tenants, in varying circumstances, on final sale of the real estate, may be entitled to have the carrying charges refunded to them. And even where such real estate is not sold, such charges may, in certain circumstances, be advanced from the principal: see Estate of Louis Mark, Orphans' Court, no. 2598 of 1932, opinion of Klein, J., 38 D. & C. 489. The decision in such matters, under Levy's Estate, supra, is in the sound discretion of the auditing judge. We take it, however, that such discretion may not be arbitrarily exercised, but must be based upon a proven factual situation. If this real estate is "frozen", has no immediate sale possibilities, or cannot be sold except at an admitted sacrifice, it would be most inequitable to require the life tenants to "carry" it for the benefit of the remaindermen. There would appear to be no testimony in this record concerning any of the facts and circumstances concerning the retention of the real estate since 1931. If the principles in Levy's Estate apply to this situation, the case should be referred back to the auditing judge for further consideration and decision.

We are of opinion, however, that the present situation is *not* a case similar to "decedent owned" unproductive real estate. It is one of normal salvage of a defaulted mortgage under Nirdlinger's Estate, supra.

At the inception of the trust it is true that the entire trust res consisted of a single piece of real estate. However, when the real estate was sold in 1921, the trustee converted the realty into personalty. It accepted payment partly in cash and the rest was secured by a purchase

money mortgage. Judge Keller, in Bulger v. Wilderman et al., 101 Pa. Superior Ct. 168, at page 171, defines the status of a mortgage most accurately when he writes:

"Generally stated, the rule in Pennsylvania is that although in form a conveyance of title, a mortgage is in reality only a security for the payment of money, or performance of other collateral contract".

The fact that the mortgage in question was a "purchase money" mortgage does not render its essential features different from any other mortgage. If a purchase money mortgage be recorded within certain statutory limits, such mortgage is accorded priority in lien over other encumbrances: see Ladner on Conveyancing, p. 113, sec. 88. This constitutes the sole difference.

The trustee possessing a defaulted mortgage (secured upon real estate formerly owned by the trust estate), it became the duty of the trustee to liquidate and collect upon such mortgage.

The trustee took title in lieu of foreclosure. Whether such title was taken because of the provisions in the mortgage or in the agreement or by compromise (see section 40 of the Fiduciaries Act of June 7, 1917, P. L. 447, and also the Act of May 5, 1939, P. L. 99), seems immaterial. No title or other objection to such a procedure is now before us. Indeed, the guardian and trustee ad litem expressly commends such action as beneficial to the estate. The transfer being solely in *lieu of foreclosure*, it seems most unimportant whether such conveyance was made by sheriff's deed or by voluntary deed of owners to avoid foreclosure.

The subsequent acquisition of title, under the foregoing circumstances, did not reconvert the personalty into realty: Robinson et al. v. Pierce et al., 278 Pa. 372, page 378; 110 A. L. R. 1397.

We, therefore, conclude that under Nirdlinger's Estate, supra, the life tenants are entitled to receive all the net income from all the assets of the trust estate not in

default, including the amount recouped from the trustees as income because of the improvident investments so made and replaced. All deficits in carrying charges respecting the real estate since its acquisition in 1931 in lieu of foreclosure should be temporarily charged against the principal and refunded to the income, the final apportionment to await sale of the real estate when the proceeds will be distributed in accordance with the formula referred to in the opinion in Nirdlinger's Estate, supra. The cash received from the obligors of the bond accompanying the mortgage and guaranteeing the same is to be paid into the principal, as part of the liquidation of the mortgage and real estate, but the income from such fund temporarily passes to the life tenants pending this procedure.

It is directed that counsel prepare a schedule of distribution, in accordance with this opinion, which shall be submitted to the auditing judge for his approval.

All exceptions or parts thereof in accordance with this opinion are sustained, and all others are dismissed. The adjudication, as amended, is confirmed absolutely.