## Miller's Estate

*J. L. N. Channell*, for accountant.

*J. B. McGurl*, for estate.

*H. O. Bechtel*, for trustee ad litem.

GANGLOFF, P. J., December 15, 1941.—Three sets of exceptions have been filed to the adjudication of the second account of the Berks County Trust Company,

substituted trustee under the will of Robert R. Miller, deceased, namely: One by the administrator c. t. a. of the estate of Jessie N. Miller, deceased, life tenant; one by H. O. Bechtel, trustee ad litem for future and undetermined interests; and the third by the accountant.

Of course, exceptions to an adjudication are for consideration of the court sitting en banc. The auditing judge here sits as the court en banc; this for the all-compelling reason that this orphans' court consists of but one judge. This circumstance—which is not unusual in this State—requires exceptant to assume the burden of convincing, if he can, the auditing judge that he should change his conclusions upon questions which had been presumably fully discussed before him and fully considered by him before the adjudication was filed. The same counsel appear now as did at the audit; the same questions are raised by the exceptions as were presented and discussed at the audit. The arguments of counsel upon the exceptions to the adjudication have in the main followed the same lines of thought as at the audit. It is probably true that doubts and difficulties incapable of exact solution confront judgment here and it is perhaps well to follow the advice of Pope, namely:

"Trust not yourself; but your defects to know,
Make use of ev'ry friend—and ev'ry foe".

Notwithstanding, therefore, that the same individual is here dealing with the very same questions he already disposed of in the adjudication, it is deemed advisable to reëxamine the reasoning of the adjudication. In following this course there will necessarily be some repetition.

The Berks County Trust Company is in the somewhat anomalous position of being the sole administrator of an estate which claims an interest in the funds of a trust estate in which it is the sole trustee; however, no one has even suggested impropriety of conduct in either capacity and we find none. Separate and able counsel represent it in each capacity.

As the adjudication shows, certain mortgage investments made by the former trustee were foreclosed because of defaults and the properties were acquired by the substituted trustee either as a whole or in the form of an undivided interest corresponding to the participation interest held in the foreclosed mortgage. These defaults caused loss of income to the life tenant, Jessie N. Miller, testator's widow, during her life tenancy. She died before any of the properties—nine in number —was sold by the substituted trustee. Two were sold about two years after her death, both at a loss. The proceeds are carried as principal in the second account of the substituted trustee and it was determined in the adjudication that these proceeds should be apportioned between the trust estate and the estate of the deceased life tenant in accordance with the formula adopted in Nirdlinger's Estate (No. 2), 327 Pa. 171. Exceptions numbered 2 and 3 of the accountant's exceptions and numbered 2, 3, 7, and 8 of the trustee ad litem's exceptions contend that this was error; that the entire proceeds are principal and should have been designated for retention as such by the accountant.

The other seven of the nine properties referred to above remained unsold and are carried as unconverted principal in the second account. In the adjudication it was determined that equitable apportionment is not presently applicable to these, primarily because there has not been a sale of the properties. It was determined also that there is no warrant in law for the court to set up a formula showing upon a percentage basis the respective interests of the trust estate and the estate of the deceased life tenant in each of these seven properties so remaining unsold. Exceptions numbered 1 to 14, inclusive, of the exceptions filed by deceased life tenant's estate, contend that error was committed here, the specific contention being that each of these seven properties should have been earmarked for both principal and income accounts; that the precise interests

should have been shown on a percentage basis and that the trustee should have been authorized to apportion upon that basis to the deceased life tenant's estate when salvage of a property is completed.

Exceptions numbered 4, 5, and 6 of both the trustee ad litem's exceptions and the accountant's exceptions also deal with the same seven properties still held and allege error because: (a) There is not a specific finding that the life tenant's estate has no interest in the seven unsold properties; (b) there is left open for future decision the question of what interest, if any, the life tenant's estate may have in the seven unsold properties which, they contend "will greatly prejudice the future administration of the trust, and will make it impossible for the substituted trustee, with safety, to use any part of the current income from the properties concerned . . . for the educational purposes of the trust"; and (c) the substituted trustee is left "without any guide to direct the future administration of the trust".

As was said in the adjudication, that equitable apportionment properly could be made of the proceeds of the two properties sold were the life tenant (testator's widow) now living, there can be no doubt: Nirdlinger's Estate (No. 2), supra. And it also was said that were the life tenant now living the net rents from the properties remaining unsold would be distributable to her under the rule announced in Nirdlinger's Estate, 331 Pa. 135. These represent the first steps leading to the two controversial questions of (a) whether apportionment is proper at all where a property, acquired and held under the facts here present, has been sold after the life tenant's death and, if proper, (b) whether, where a property, acquired and held under the same facts, has not been sold and the life tenant is dead, a definite schedule should be set up by the court for guidance of the trustee, showing upon a percentage basis the respective interests of the trust estate and the estate of the deceased life tenant in such property, to the end

that when a sale is made in the future the trustee will know how the proceeds are to be divided and in the meantime will know how to distribute the income.

There are several cases which definitely hold that death of the life tenant is not, standing alone, a bar to equitable apportionment of proceeds of a sale made after the life tenant's death. First, there are those cases which hold that termination of the trust before sale of the property (whether real estate or personalty) bars apportionment and by inference hold that apportionment might be proper where the trust is not terminated: Neafie's Estate, 325 Pa. 561; Nirdlinger's Estate (No. 1), 327 Pa. 160; Green et al. v. Philadelphia Inquirer Co. et al., 329 Pa. 169; Spear's Estate, 333 Pa. 199; Myers' Trust, 35 D. & C. 492.

Next there are those cases which hold that equitable apportionment in favor of the estate of a deceased life tenant is proper and legal where there are successive life estates in the income and one or more but not all of the life tenants have died and sale or salvage takes place before the trust terminates: McKeown's Estate, 263 Pa. 78; Graham's Estate, 296 Pa. 436; Neafie's Estate, supra; Nirdlinger's Estate (No. 1), supra.

However, in Nirdlinger's Estate (No. 1) it is pointed out (p. 170):

"Practical difficulties sometimes make apportionment . . . impossible, and for this reason it becomes a discretionary matter. . . . The paramount factors to be considered are the delay attendant upon the settlement of the deceased life tenant's estate, and the time when the fund comes into the trust and the means by which it was procured".

Now, of course, when we speak of paramount factors it does not mean that these are the only factors to be considered; there may be others which properly are practical difficulties standing in the way of apportionment.

Of course, in the case at bar we are not dealing with extraordinary dividends or stock rights. In these latter cases earnings accumulated but were not distributed in the form of dividends during a life tenancy and by reason thereof the life tenant acquired what might be termed an embryonic right to, as distinguished from a vested or property interest in, these earnings. This embryonic right passed, upon the death of the life tenant, to the life tenant's estate. There it was an abortive right, that is, valueless, if the trust terminated with the death of the life tenant; if the trust continued for the benefit of successive life tenants, the right continued in its original state, subject to the vicissitudes of the business, until liquidation was accomplished, when the right became a vested or property right entitling the estate of the deceased life tenant to an equitable apportionment of the fund, providing practical difficulties are not encountered; if practical difficulties are encountered then the right is an abortive one, the same as where the trust ends with the death of the life tenant or the last of successive life tenants, as the case may be. Now, in the case of defaulted mortgages held by the trustee, resulting in foreclosure proceedings and purchase of the property by the trustee, followed by loss of income to the life tenant, there is again an accumulation of income to which the life tenant is entitled, but this accumulation results not from actual earnings, as is the case with extraordinary dividends or stock rights, but from an inequitable denial of income. There is a "foundational reason" for this, namely, ". . . that in nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminishment of principal to be paid to far off remaindermen": Nirdlinger's Estate (No. 2), supra, p. 173. So, in both situations in this paragraph discussed, the life tenant, dur-

ing the life tenancy, acquires the right to certain earnings, in the one case actually earned and in the other case actually due as a matter of equity and plain justice, but in both cases the right is an embryonic one. If salvage is completed during the life tenancy, the life tenant shares, under the doctrine of equitable apportionment, in the proceeds by way of recoupment of income which had been denied theretofore; if salvage is not accomplished during the life tenancy the embryonic right passes to the estate of the deceased life tenant and there it may be an abortive one or a property right under the same principles that apply to extraordinary dividends or stock rights referred to above. Certainly, Neafie's Estate, Nirdlinger's Estate (No. 1), and Green et al. v. Philadelphia Inquirer Co. et al., hereinabove cited, are complete authority for the conclusion that, even after the death of a life tenant, the doctrine of equitable apportionment applies, upon the salvage of a property acquired under the circumstances of the case at bar, as in the case of extraordinary dividends, providing the trust has not terminated and practical difficulties do not stand in the way of apportionment. That this is so is clearly intimated by the appellate court in Spear's Estate, supra.

In the adjudication to which the exceptions apply the author hereof, as auditing judge, fell into error in not distinguishing between the inception of the right to apportionment and the actual application of that right. We have seen that the right to apportionment is not a vested interest or property right; it is only an embryonic right that flows from the foundational reason already mentioned. That testator's widow as life tenant comes within the foundational reason there can be no doubt. Income was denied her during her life tenancy and therefore her right to this income, under the doctrine of equitable apportionment but subject as well as to its limitations, became fixed in her lifetime. That right passed to her estate upon her death and the

fact that any benefits which might be derived therefrom by her estate would enrich persons in whom testator was not interested at all is not a valid objection to the application of apportionment. The trustee ad litem stressed very strongly the contention that, since the widow (life tenant) is dead, the foundational reason for apportionment no longer is applicable. This contention has force only if a distinction is not made between the inception of the right to apportionment and its actual application to a fund. Once this distinction is made it can readily be seen that the contention of the trustee ad litem loses its force. As auditing judge we indicated some concern upon this point and left the impression that there was hesitation in determining which way the scales turned. But, as stated above, this was due, it seems, to faulty reasoning.

So we start out with the settled premise that when testator's widow, the life tenant, died there passed to her estate the right to apportionment of the proceeds of the nine properties as and when salvage is completed, providing practical difficulties do not stand in the way. After a most careful reappraisal of our reasoning as set forth in the adjudication we have come to the conclusion that a number of important factors, when given the weight they merit, point conclusively to error in the conclusion reached touching the two properties converted into cash.

First, there are no successive life tenants. This was not considered at the argument upon the exceptions. It occurred to the writer afterward and a memorandum was thereupon sent to counsel asking for reargument in the light of this additional thought. The reargument followed. To say that a life tenant must measure up to the foundational reason already mentioned in order to qualify for equitable apportionment is saying what has been said several times herein. Under the terms of testator's will there are two persons now living who receive $50 per month for their respective lives and

then there are those who share under the educational trust. The income has been more than sufficient to pay the $100 monthly, so that these two life tenants are not entitled to apportionment. The beneficiaries of the educational trust receive only such amounts of the income as the trustee deems wise to give. Not one of these beneficiaries is entitled to a fractional part of all the income and not one is entitled to any part of the income for life. They are not "foundational reason" life tenants at all. Therefore, there are no successive life tenants in this case and this is practical difficulty number one.

Second, the educational trust which under the will is to follow the life estate to the widow (subject to the $50 to be paid to each of two persons for life) is a perpetual trust. It is legal because it is a charitable trust: Kimberley's Estate (No. 1), 249 Pa. 469; Thompson's Estate, 282 Pa. 30. There is no remainder over. This educational trust is all-inclusive. It is both remainderman and beneficiaries. In other words, it is a complete entity which takes over, just as a remainderman given an absolute estate, the entire corpus of testator's estate remaining upon the death of Mrs. Miller. In this view, there was a termination of the trust, insofar as the application of the doctrine of equitable apportionment is concerned, upon the death of Mrs. Miller, the life tenant. Here is practical difficulty number two.

Third, assuming that the educational trust is a continuation of the trust created for the life of Mrs. Miller, the question of how to apply the formula for ascertaining what is due the deceased life tenant's estate and what is due the remainder estate (or whatever term is appropriate to the educational trust) presents itself. That formula contemplates a remainderman as well as a life tenant or successive life tenants. To say that the educational trust takes the place of the remainderman (entitled to the corpus) is to say that practical difficulty number two above applies. To say that the bene-

ficiaries of the educational trust may be viewed as one composite body making up what might be termed successive life tenants is to say that this composite body is entitled to equitable apportionment with the deceased life tenant's estate upon salvage of each property. Here would be real difficulty as well as an unjustifiable consumption of principal. Each time salvage of a property is completed the educational trust would receive as income a proportionate share of the salvage proceeds as ascertained under the approved formula. There is at least one of the seven properties which, in the opinion of counsel for the substituted trustee, may take as long as 20 years to liquidate. Even half of that length of time would mean that the beneficiaries of the educational trust would use as income a large part of the fund which testator intended for principal to produce income. In other words, the corpus or principal of the educational trust would be seriously depleted if apportionment is to apply to the beneficiaries of the educational trust. Surely, this would partly defeat the very object testator attempted to accomplish. Here is difficulty number three.

Fourth, testator states in his will that the greater part of the estate which he sets aside for his wife and the educational trust came from his father who, he further states, was very much interested in the purposes for which this educational trust is created. The language of the will clearly shows that testator desired the educational trust to be administered so that as much income as possible be obtained. The more the principal is depleted the less the income will be. That is self-evident. The application of equitable apportionment to the greater part of the trust estate—and the record plainly shows that the nine properties taken over through foreclosure proceedings represent in value, as carried in the account, the greater part of the entire trust estate—would indeed frustrate testator's intention as expressed in his will. Even if we limit the appli

cation of equitable apportionment in favor of the estate of the deceased life tenant alone there would be substantial inroads upon what otherwise would be principal of the trust estate. Having so clearly expressed his purposes, could it not be said that this court, were it to conclude that apportionment applies notwithstanding this expressed intent, was giving too much effect to legal learning and not enough to the realities of the record? This is hardly the performance of the judicial function. Here, then, is difficulty number four, or, more appropriately, an indicated intent of testator that apportionment should not apply even in favor of the deceased widow's estate.

Fifth, should not a distinction be made between income actually earned, as in the extraordinary dividend and stock rights cases hereinbefore cited, and income not actually earned as in mortgage foreclosure cases where the property thereby acquired is sold at a loss? In the former cases there is no depletion of principal but in the latter there is; in the former the preservation of intact value is of importance whereas in the latter intact value has no place. True, while the life tenant is living the foundational reason for helping that life tenant is controlling and both justice and equity require that she be given that assistance. But once she has died should her estate be permitted to take part of the principal of a trust fund that was created for other purposes in addition to her life estate, thereby partly defeating the latter purposes? If apportionment is made to a deceased life tenant's estate of actual earnings accrued during the life tenancy, as in the extraordinary dividend cases, there is no harm done to the corpus of the trust, but where apportionment is made of the proceeds resulting from salvage of a property acquired under foreclosure of a mortgage held in the trust, when the salvage shows a loss, there is a depletion of principal to help not the life tenant—for she is dead—but to help a stranger to testator's carefully-prepared plan to do a good turn for his fellow-man.

Sixth, as to the properties not sold, there are additional difficulties in the way of applying apportionment. One of the seven consists of 99 houses which the substituted trustee is endeavoring to sell piecemeal and on a time-payment basis. As long as 20 years may be required to complete these sales. Some of the seven are merely fractional interests in the property. The bookkeeping problems are evident. The disposition of the income from each property is a problem in itself. Surely these are practical difficulties that stand in the way of apportionment of the seven unsold properties.

Further discussion seems unnecessary. The practical difficulties which would be encountered in this case in applying equitable apportionment and the clearly-expressed intent of testator with reference to the charitable trust created by him require that apportionment be disapproved not only as to the two properties already sold but also as to the seven properties not disposed of.

We, therefore, sustain accountant's second, third, fourth, fifth, and sixth exceptions and we also sustain the second, third, fourth, fifth, sixth, seventh, and eighth exceptions filed by the trustee ad litem.

We dismiss exceptions numbered 1 to 14, inclusive, filed by the administrator c. t. a. of the estate of Jessie N. Miller, deceased.

Exception numbered 15 filed by the estate of the deceased life tenant contends that the auditing judge erred in saying in the adjudication that practical difficulties stand in the way of apportionment of the proceeds of the seven unsold properties. This has been discussed herein. This exception is dismissed.

Exception 1 of the accountant's exceptions and 1 of the trustee ad litem's exceptions contend that the auditing judge erred in treating $651.67 interest collected as part of the income balance whereas this item should have been treated as a surcharge to income balance. This error resulted from a misunderstanding and will be corrected. These exceptions are sustained and the

accountant is surcharged in that amount, thereby increasing what is designated as the general income balance from $4,168.78 to $4,820.45.

The only remaining exception is no. 16 filed by the estate of the deceased life tenant. This contends that error was committed in entering the decree of July 28, 1941. Because of the action taken upon the other exceptions this decree must be vacated and exception 16 must be and is sustained.

Needless to say, the action of the auditing judge in sustaining exceptions 7 and 9 filed by the deceased life tenant's estate to the second account was error. These exceptions should have been dismissed.

In view of the conclusions thus reached it follows, of course, that the proceeds of the two properties already sold are properly carried in the account as principal and that the seven properties remaining unsold also are properly carried in the account as principal. The entire principal remains in the hands of the substituted trustee for administration under the terms of the will.

The income item of $651.67 is presently distributable to the deceased life tenant's estate under the provisions of section 22 of the Fiduciaries Act of June 7, 1917, P. L. 447. Distribution will be decreed from the general income balance. The other income balances remain as shown in the account, namely, 6 Earl Gables, Mt. Penn, Pa., $72.77; 912-12½ Eleventh Ave., Altoona, Pa., $281.63; 104 Third Ave., Westmont, Johnstown, Pa., $401.82, and 99 houses, Altoona, Pa., $335.38; these balances remain in the hands of the substituted trustee for administration under the terms of the will.

And now, December 15, 1941, the exceptions filed by the substituted trustee and by the trustee ad litem to the adjudication and exception no. 16 of the exceptions filed thereto by the administrator c. t. a. of the estate of Jessie N. Miller, deceased, having been sustained, and the remaining exceptions filed by the latter administrator having been dismissed, the court

finds that the estate of Jessie N. Miller, deceased, is not entitled to equitable apportionment of either the proceeds of the two properties converted into cash or the proceeds, when and as realized, of the seven properties carried in the account in kind; and it is ordered and decreed that the second account of the substituted trustee be and it hereby is amended by surcharging accountant in the sum of $651.67 in income, thereby increasing the general income balance to $4,820.45; it is further ordered and decreed that the decree entered July 28, 1941, be and it hereby is opened and set aside and in place thereof it is now further ordered and decreed that the second account of the substituted trustee, as herein amended by surcharge of income, be and it hereby is confirmed absolutely and the following distribution of income is decreed in accordance with the conclusions hereinbefore expressed, namely:

Balance for distribution (general income) .............. $4,820.45

*Distribution*

To be paid to administrator c. t. a. of the estate of Jessie N. Miller, deceased ...... $651.67
To be retained by accountant, for administration under the terms of the will... 4,168.78   $4,820.45