JOHN FREDERICK LEWIS, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ADA HAESELER LEWIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107109, 107110. Promulgated January 12, 1943.

*Otto Wolff, Jr., Esq.,* for the petitioner.
*Harry L. Brown, Esq.,* for the respondent.

451

OPINION.

Harron, *Judge:* The question is whether the income of the trust which was retained by the trustees to take care of the carrying

charges of certain real estate which was unproductive is the income of the life beneficiaries and taxable to them. The petitioners are two of the life beneficiaries and their income tax liability only is before us. Respondent contends that the rule under Pennsylvania law is that all of the income from unproductive real estate belongs to income beneficiaries of a trust and that it follows that the carrying charges on such property are a charge against principal. Respondent cites *In re Nirdlinger's Estate* (1938), 200 Atl. 656, and *In re Levy's Estate* (1939), 5 Atl. (2d) 98, as authority for his contention. Petitioners argue that these cases do not support respondent's view and that until the Pennsylvania court having jurisdiction over the trust determines from what source the charges for carrying the unproductive real estate of the trust here involved are to be paid, from principal or income or both, the trustees' treatment should control and the petitioners should not be held liable for tax on the portion of the trust income set aside to cover the charges. Petitioner relies on *Levy's Estate*.

The issue raised by the pleadings does not present a question relating to the propriety of deducting from the gross income of the trust allowances for depreciation on the property in computing the distributable income, and we do not give consideration to such question. Cf. *Freuler* v. *Helvering*, 291 U. S. 35. Rather, the issue is framed so that the depreciation allowances taken by the trustees are treated merely as carrying charges, along with taxes and general expenses. All are put together into the general category of "carrying charges." The question is thus limited by the pleadings and by the stipulation of facts filed. We shall consider, therefore, only the broad question of whether or not carrying charges on unproductive real estate are payable out of trust income, namely, from the income derived from other property in the trust, under Pennsylvania rule, if such exists, or under the terms of the trust.

The provisions of section 162 (b) of the Revenue Act of 1936[1] are that in computing the net income of the trust there shall be allowed as a deduction the amount of the income of the trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, but the amount so allowed as a deduction shall be

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

included in computing the net income of the beneficiaries whether distributed to them or not. The question here is, further, whether the amount of the trust income which was to be distributed to the petitioners included the amount of the trust income which the trustees set aside to cover the carrying charges on the unproductive real estate.

The trustees are directed by the express terms of the trust to deduct all lawful charges and expenses from gross income in computing the net income to be distributed to the life beneficiaries. The trust makes no reference to any different treatment of expenses on unproductive property. There has been no accounting filed by the trustees in a local court having jurisdiction, there has been no dispute among the beneficiaries and the trustees, and there has not been any determination made by a local court of the matter of which is to bear the burden of carrying the unproductive property, principal or income. Cf. *Freuler* v. *Helvering*, *supra*. There has been no order of a local court which would govern here the question of the correct amount of the distributable income of the trust. That being so, is there a rule announced by either or both of the two cases cited by respondent which supports respondent's determination?

In *Nirdlinger's Estate* mortgages had been foreclosed and the properties covered by them, having been bought in by the trustees, were held pending sale. The court pointed out that each individual property involved a "salvage operation." The question was who was entitled to the net rents during the time the property was held. Several solutions were proposed, but the court said that the income of the life tenants should be preserved to them, holding that "net rents based upon the return from each individual property, shall be distributed to life tenants." The court also considered whether or not all of the properties should be grouped or whether each property should be considered separately, in computing the amount of the rents payable to the life tenants. The court concluded that the payments of net rents should be based on each individual property. In general net rents from individual property were to be distributed, that is, gross rents, less taxes and carrying charges. Such net rents from productive property were not to be reduced by the carrying charges on unproductive property, according to our understanding of the opinion. *Nirdlinger's Estate* states the rule that trustees are not to group *foreclosed properties* in computing distributable income. The problem here is whether or not such rule applies to properties which constitute part of the original corpus as distinguished from properties acquired through foreclosure which are held pending sale.

In *Levy's Estate* the court said that the "precise question of the allocation of carrying charges of unproductive real estate of which a testator died seized" had not heretofore been presented to the court,

and that *Nirdlinger's Estate* "involved the apportionment of carrying charges, where there was a salvage of collateral, held by the estate, in which both the life beneficiary and remaindermen had an interest, the former because interest had not been paid." In *Levy's Estate* the life beneficiary and remaindermen had interestes in certain real estate. There had been a sale of the real estate and a profit had been realized. The property had been sold for over $100,000, the net gain being about $5,000, and the question was whether the life beneficiary should be reimbursed out of the proceeds of the sale for taxes on the property which had been paid from income of the estate between the testator's death and the sale. The life beneficiary sought to recover income which the trustees had retained to meet the carrying charges of property which had been unproductive. The court viewed the rule adopted in *Nirdlinger's* case as limited to the situation there, as it related to salvage of collateral, and said:

While it is true that, in times past, no contention was made, or if made was not entertained, that carrying charges of unproductive real estate should be paid out of principal, and it was assumed they were payable out of income, a new day has brought about sound reasons for a departure from this practice, and now we are of opinion that in all cases they should not be charged to and be paid by income, but that whether to be so paid, or to be paid out of principal, or divided between the two, should be determined by considering the equities in each case. The determination of the question is one for the exercise of a sound discretion by the court of first instance and we will review only where there has been a palpable abuse of discretion. The difficulties anticipated in carrying out this program are we think more fanciful than real. The matter can be determined when accounts are filed, embodying the proceeds of the sale of unproductive real estate, or, if greater celerity of disposition is required, the matter can be specially brought before the court.

So saying, the court remanded the case to the Orphans' Court to determine whether or not the equities in the situation were such that the life tenant should be reimbursed for taxes paid. A majority of the judges of the Orphans' Court had laid down the general rule that carrying charges of unproductive real estate should be paid out of principal *in all cases*. The dissenting minority of judges had expressed the view that the matter should be adjudicated, in each instance as it arises, according to the equities as between income recipients and those entitled to principal. The Supreme Court specifically said, "We agree with the latter view."

No case has been cited, and we do not find any, in which the Supreme Court of Pennsylvania has given further consideration to this problem. *Levy's Estate*, decided in 1939, appears to be the latest pronouncement of any rule. That case, therefore, must provide guidance here, and, as we read that opinion, there is no general rule to be applied in *all cases*, but in each case the matter is to be considered according to the equities as between life beneficiaries and remainder-

men. In other words, the Supreme Court of Pennsylvania has indicated that the broad rule stated in the Restatement of the Law of Trusts[2] is not to be applied as a general rule in all cases in that state.

There is a close parallel between the status of property of which a testator dies seized and property conveyed by a trustee in an *inter vivos* trust, and, assuming that the parallel is sound, the trust involved here would come within the view expressed in *Levy's Estate*. Under that view the trustees of the Lewis Trust No. 2 appear to have a problem which requires their seeking special direction by the court which has jurisdiction of the trust as to how to defray the carrying charges of the unproductive real estate in the trust. The trustees have assumed that the carrying charges on unproductive real estate are payable out of income, but they may be in error. If they are in error, under the equities involved in the particular trust, the amount of the distributable income of this trust is greater than the trustees have determined and paid to the life beneficiaries, including petitioners.

Our problem is to determine the correctness of respondent's determination; that is, to determine the correct amount of the distributable income of the trusts. The burden is upon the petitioners to prove that respondent's determination is incorrect. To meet this burden of proof, the petitioners have relied solely upon the terms of the trust instrument. Is that sufficient? The trust indenture makes no mention of the way carrying charges on unproductive property are to be met, nor does it require the trustees to sell the trust assets if a specific rate of income is not earned. The trust indenture does not state that it is the purpose or intent of the grantor that any amount of income or rate of return upon investments is desired. The only provision of the trust which casts light on the grantor's intent in the matter of the investment of the trust estate is as follows:

2. The said Trustees, and their successors, shall have full power and authority to invest said trust estate in such securities as they may deem prudent, having regard to the security of the investment, rather than to the rate of income, and without restricting them to so-called legal investments for Trustees; * * * and at any time to convert, dispose of and sell, at either public or private sale, all or any investments, securities, real estate and other property which may at any time comprise the principal of said trust estate, for such prices, and on such terms, as the said Trustees, the survivor of them, and any succeeding Trustee may deem proper, * * *

---

[2] Vol. 1, p. 689, par. 233 (m) :

"Ordinary current expenses as well as extraordinary expenses incurred in connection with unproductive property are payable out of principal, unless it is otherwise provided by the terms of the trust. Thus, taxes and other carrying charges on unproductive land are payable out of principal, even though the trust estate includes other property from which an income is derived, unless it is otherwise provided by the terms of the trust."

Some weight should be given to the grantor's expression that the trustees are to give "regard" to the security of the investment, rather than the rate of income. Reading that direction with the direction that the trustees shall deduct all lawful charges and expenses from gross income before distributing the net income, there has been no violation of the terms of the trust by the trustees.

It is our opinion petitioners have met their burden of proof and need go no further than they have in showing the terms of the trust, and that none of the beneficiaries have contested the propriety of the trustees' determination. The rule so far expressed by the Supreme Court of Pennsylvania permits latitude of discretion by the court of first instance. Before the interested persons go to court to request it to exercise its discretion, the trustees must exercise their discretion. It has been held that, ordinarily, the interpretation of a trust by the interested parties should be given great consideration and not be set aside lightly. *Anna M. Chambers*, 17 B. T. A. 820; *E. L. E. Brenneman*, 10 B. T. A. 544; *Mary Helen Cadwalader*, 27 B. T. A. 1078, 1082. It has been said, also, that taxation is a practical matter. The petitioners have not received trust income in the amounts which the respondent has added to their taxable income in the taxable years, and it may be that they never will, if the court in Pennsylvania having jurisdiction over the trust, when it receives the matter, sustains the trustees in their computation of the amount of the distributable income of the trust. That is a possibility. If the court does not sustain the trustees (if, as, and when it ever has to make a determination relating to the carrying charges on the unproductive real estate), and the trustees reimburse the petitioners for income which they have withheld to cover said carrying charges, then, at such time, the petitioners will be subject to tax upon the income which respondent now attempts to tax them upon. There are equitable considerations in taxation. To tax the petitioners upon income which can not be said to be "distributable income," with finality and certainty as a matter of local law, would be to penalize the petitioners for their reliance upon the correctness of the trustees' acts. Also, to make it a rule for purposes of Federal income tax, that in all cases involving Pennsylvania trusts the carrying charges on unproductive real estate should be paid out of principal, where no such rule has been adopted by Pennsylvania courts, would, of necessity, require either that trustees distribute trust income without reserving amounts for such carrying charges and then recover from the beneficiaries if a court required later, or, that beneficiaries pay a tax on income which they may never receive.

Giving due consideration to the equities and the uncertainties in the local law, all being inherent in the situation presented here, we are of the opinion that the terms of the trust instrument are control-

ling, and that under the terms of the trust the amount of the trust income which was to be distributed in the taxable years to petitioners was the amount which actually was distributed in each year. It is held that respondent erred in determining that an excess amount, representing that which the trustees withheld for the carrying charges, was distributable income under section 162 (b).

The deficiencies have been contested in part only. Accordingly, while holding for the petitioners,

*Decisions will be entered under Rule 50.*