## Keasbey's Estate

*John Russell,* for accountant.

*Rodney T. Bonsall* and *Benjamin O. Frick,* for executor.

*Belmont, Benedetto & Rubin,* for guardian and trustee ad litem.

*Michael C. McManus,* for Metropolitan Museum of Art.

KLEIN, J., February 18, 1944.—The basic question confronting us concerns the correctness of the division of the proceeds recovered from the collateral which secured the defaulted bond of Dr. Mattison, between the trust estate created under the settlor's will and the inter vivos trust estate created by the deed of trust.

Fidelity-Philadelphia Trust Company was named trustee under the will and also under the deed of trust. When this matter was originally before us on exceptions to Judge Bolger's adjudication, the account of the testamentary trustee was pending, unaudited, in Montgomery County. We, therefore, suspended confirmation of the adjudication and directed Fidelity-Philadelphia Trust Company, trustee of the inter vivos trust, to present a claim against itself as testamentary trustee in Montgomery County for the alleged overpayment into the testamentary trust estate: Keasbey's Estate, 40 D. & C. 300 (1940). An appeal to the Supreme Court from this order was quashed: 342 Pa. 439 (1941).

Thereafter, the account of the testamentary trustee was audited by Holland, P. J., in the Orphans' Court of Montgomery County. At that audit the claim for the alleged overpayment to the testamentary trust estate was presented in accordance with our direction.

Judge Holland, after a scholarly and comprehensive discussion of the question, held that the rule in Nirdlinger's Estate had no application to the issue and that the trustees of both the testamentary trust and

the trust inter vivos must be regarded as creditors with reference to the collateral available for distribution to them. He decided, further, in view of the fact that the collateral was not sufficient to pay the creditors in full, that the claim for interest must be disregarded. He therefore concluded, as did Judge Bolger, that the division made by the trustees was correct and proper and dismissed the claim of the accountant.

In the proceedings in Montgomery County the executor of the estate of Helen K. Frischkorn, one of the income beneficiaries, and the Metropolitan Museum of Art were both represented by counsel and participated actively in the litigation.

After Judge Holland completed his audit of the account of the testamentary trustee, Judge Bolger readjudicated the account in the inter vivos trust estate and reaffirmed his original decision on this point. Judge Bolger, in his readjudication, said:

"I have ruled that the apportionment mentioned was proper. An exception to that ruling will bring the matter squarely before the court en banc and, if the res judicata feature is material, it can be argued and decided at that time."

We are all of the opinion that we are bound by Judge Holland's decision and that the matter is res judicata. The precise question submitted to Judge Holland for decision was whether the proceeds recovered from the disposition of the collateral securing the Mattison bond were properly divided between the testamentary trust and the inter vivos trust. Exactly the same question, involving the same parties and the same subject matter, is submitted to us. As a matter of fact, the whole purpose of suspending Judge Bolger's previous adjudication was to enable the parties to submit the matter to Judge Holland for decision. None of the parties in interest is in a position now to question that decision except by appeal to the Supreme Court.

."Where a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and affect the fund or other subject-matter then before the court": Wallace's Estate, 316 Pa. 148 (1934) (syllabus).

See also First Trust Co. v. Philadelphia Pure Rye Whiskey Distilling Co., 327 Pa. 145 (1937).

This court would undoubtedly have the right to surcharge the accountant had it failed to obey the direction contained in our previous opinion or if it had conducted the litigation in Montgomery County negligently or imprudently. No such claim for surcharge is made at this time, however, and it is obvious that if it were made it would have to be dismissed because the entire question was fully and fairly presented to Judge Holland. We must therefore sustain the division of the proceeds recovered by the trustee between the testamentary estate and the inter vivos estate on the ground of res judicata without considering the merits of the question.

Accountant and the guardian ad litem make no objection to Judge Bolger's conclusion with respect to the division of the salvage proceeds between the two estates. They maintain, however, that the entire share of the proceeds received by the inter vivos trust estate should have been allotted to principal. They contend that the auditing judge erred in extending the apportionment doctrine enunciated in Nirdlinger's Estate (No. 2), 327 Pa. 171 (1937), to the present case and take the position that the Nirdlinger rule should be

restricted to salvage operations following foreclosure of mortgages secured by real estate.

In the Nirdlinger case the Supreme Court, following section 241 of the A. L. I. Restatement of Trusts, directed an apportionment between principal and income of the proceeds of foreclosed real estate following a default on a bond secured by a mortgage on the real estate. In the present case the auditing judge directed an apportionment following default on a bond secured by personal property, viz, shares of the capital stock of a corporation.

The doctrine of apportionment is an equitable one, limited exclusively to property held in trust, where the fiduciary has a responsibility to income beneficiaries as well as to remaindermen. It is based upon the premise that in long-continuing trusts the life tenants are usually the favored beneficiaries of testators and settlors. The courts have therefore attempted to preserve their incomes for them so far as it is possible to do so. Mortgages have been regarded as favored investments by both fiduciaries and cestuis que trustent alike for many years. As a result, a large proportion of the assets in the portfolios of many trust estates consisted of this type of investment. If the Nirdlinger rule had not been adopted following the great economic depression of the last decade, many life tenants would have been deprived of all or the greater part of the income to which they were entitled.

We are not unmindful of the many practical difficulties which would result from a thoughtless extension of this apportionment doctrine. But we fail to find anything in the Nirdlinger decision or in section 241 of the Restatement which indicates that the rule should be limited to salvage operations involving real estate acquired by foreclosure. On the contrary, comment b to section 241 (p. 735) states:

"The rule stated in this Section is applicable in the case of mortgages *and other investments* held in trust upon which the trustee ceases to receive income and which are ultimately disposed of at a loss." (Italics supplied.)

The fact that in the present case the bond held by the trustee was secured by shares of capital stock of a corporation instead of by a mortgage secured on real estate is, in our opinion, immaterial. The important basic fact is that the trustee had in its possession a bond secured by collateral for the benefit of both life beneficiaries and remaindermen. We therefore think the decision of the auditing judge, allowing the apportionment in the manner set forth in the adjudication, was correct.

Learned counsel for accountant vigorously contends that, even if the doctrine of apportionment is applicable to a situation in which the collateral held by the trustee consists of shares of stock of a corporation, under the facts of the present case the apportionment rule should not be applied, because section 241 of the Restatement limits its application to situations in which the trustee is from the outset under a duty to sell property originally received as part of the trust estate. He maintains that the deed of trust before us contains a power to retain the investment and that therefore no duty to sell it arose and no apportionment should be directed.

We think this contention is without merit. We have studied the deed of trust carefully and fail to find anything in it which can be construed as authority for the trustee to retain the Mattison bond indefinitely. The whole tenor of the deed of trust indicates that the settlor expected the trustee to collect the instalments of $500,000, plus interest, as and when each one became due and payable. The investment was a most unusual one and may be regarded as sui generis.

It must be conceded that it was not an asset that could be readily sold on the open market, but it is manifest that the settlor contemplated that the trustee would hold it only until the instalments were paid. The fact that the trustee was given discretion as to the action it might take to enforce the covenants of the bond in the event of default does not in our opinion exempt this asset from the application of the rule of apportionment laid down in section 241 of the Restatement.

We are also all of one mind that there is no merit in the contention of the executor of the deceased life tenant's estate that all of the unpaid interest due on the principal obligation should be awarded to the life tenants before the apportionment formula is applied. We regard the expression "all the interest required to be paid by the terms of the said bond" and other language used in the trust deed merely as a direction that the interest due and owing on the principal debt should become the property of the life tenants, as and when it was actually paid by the obligors. When the default occurred, the interest payments as such automatically ceased. From that point on the transaction became a salvage operation, subject to the apportionment rule. To hold otherwise would completely frustrate the settlor's clear intent evidenced by the carefully considered language of the trust indenture. If the life tenant's theory were accepted, upon the occurrence of a default the entire trust principal would be depleted if the salvage operation extended over any protracted period of time. The situation is no different in principle from that existing in Nirdlinger's Estate, in which the bonds and mortgages provided that the debtors were required to pay a fixed rate of interest on the principal debts.

It is not necessary for us to discuss the other questions raised by the exceptions as they have all been fully treated in the adjudication.

The exceptions are therefore all dismissed and the adjudication confirmed absolutely.