MARJORIE V. L. HUDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8695. Promulgated April 30, 1947.

*Chester J. McGuire, Esq.*, and *Wm. R. Spofford, Esq.*, for the petitioner.

*Karl W. Windhorst, Esq.*, for the respondent.

952

## OPINION.

JOHNSON, *Judge*: Under the theory that trust income which the trustee applied to the payment of taxes, repairs, and operating expenses of the Broad Street building should have been charged against trust principal, the Commissioner has determined by a computation not fully disclosed that such a charge would release funds for distribution to petitioner as life beneficiary and accordingly has added to the income reported by her $12,329.73 for 1937, $10,857.08 for 1938, and $15,896.43 for 1940, as representing amounts distributable and, hence, taxable to her as trust income under section 162 (b) Internal Revenue Code.[1] If such amounts were in fact distributable to her, they should be included in her taxable income for the several years, regardless of her failure to receive them, *Malcom* v. *Commissioner*, 97 Fed. (2d) 381, and cases cited, and regardless of their character as income or principal to the trust, *Johnston* v. *Helvering*, 141 Fed. (2d) 208; certiorari denied, 323 U. S. 715.

As the trust was created and administered in Pennsylvania, the law of that state determines petitioner's rights, *Blair* v. *Commissioner*, 300

---

[1] SEC. 162. NET INCOME.

* * * * * * *

(b) [Prior to amendment by section 111 (b), Revenue Act of 1942.] There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, * * * but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. * * *

U. S. 5; *Freuler* v. *Helvering*, 291 U. S. 35. Prior to 1938 it was unquestioned in Pennsylvania that trust expenses, including carrying charges on unproductive real estate, were payable from trust income. *Commissioner* v. *Lewis* (C. C. A., 3d Cir.), 141 Fed. (2d) 221; *In re Levy's Estate*, 333 Pa. 440; 5 Atl. (2d) 98. The trustee applied that rule, and his accounts for 1937 and prior years were approved by an order of the orphans' court in May 1938. "That order has not been reversed or overruled and is, therefore, conclusive." *Letts* v. *Commissioner* (C. C. A., 9th Cir.), 84 Fed. (2d) 760. See also *Josephine Towne Clegg*, 47 B. T. A. 934; *Estate of Sallie Houston Henry et al., Executors*, 47 B. T. A. 843; *Jennie Arrott Adams*, 44 B. T. A. 408.

On June 30, 1938, the Supreme Court of Pennsylvania modified the rule, holding in *In re Nirdlinger's Estate (No. 2)*, 331 Pa. 135; 200 Atl. 656, that:

* * * net rents from foreclosed properties, that is gross rents, less taxes, insurance, repairs and other carrying charges, should be paid to life tenants. * * * The carrying charges on unproductive property can be advanced out of principal.

This decision was closely integrated with a prior one, *In re Nirdlinger's Estate (No. 1)*, 327 Pa. 171; 193 Atl. 30 (July 7, 1937), wherein the court awarded to the income beneficiary a portion of the sale proceeds from foreclosed real estate on which the trust held a mortgage, such portion to be computed in accordance with the formula prescribed by the American Law Institute in its Restatement of the Law of Trusts, section 241. And in extending the principle to foreclosed real estate bid in and held by the trustee, it expressly contemplated an eventual sale, viewed each individual property as a separate salvage operation requiring a separate computation, and directed that proper adjustment be made for income paid to the life beneficiary and for advances of carrying charges when the property acquired should be sold and the proceeds apportioned in accordance with the formula. On March 22, 1939, the court made a further modification of the apportionment rule, holding in *In re Levy's Estate, supra*, that carrying charges on unproductive trust-held real estate could be charged against or divided between income and principal according to the equities in each case. But this decision was applicable only to property which had been held by the grantor or executor and not to property acquired by the fiduciary in a salvage operation, which remained subject to the *Nirdlinger* rule. *In re Crozer's Estate*, 346 Pa. 446; 31 Atl. (2d) 147 (Mar. 22, 1943). That rule was later held applicable to collateral other than real estate acquired by the fiduciary, *In re Haugh's Estate*, 33 Pa. D. & C. 202 (May 13, 1938); *In re Keasbey's Estate*, 49 Pa. D. & C. 690 (Feb. 18, 1944), and to mortgaged property which the mortgagor voluntarily deeded to the fiduciary in lieu of

foreclosure, *In re Cope's Estate*, 38 Pa. D. & C. 327 (Apr. 12, 1940); *In re Pfromm's Estate*, 40 Pa. D. & C. 104 (Dec. 20, 1940). But the beneficiary's right to the income distributed before completion of the salvage operation was described as "embryonic," *Miller's Estate*, 43 Pa. D. & C. 565 (Dec. 15, 1941); and in *Romberger's Estate*, 39 Pa. D. & C. 604 (Dec. 6, 1940), the orphans' court refused to make any anticipatory allocation, saying:

> Considerable testimony was taken as to allocation as between principal and income of carrying charges upon unproductive and underproductive real estate held by the trustees, either as mortgagees in possession, or pending liquidation foreclosure. As there is no other fund, except out of rentals, with which to pay such carrying charges, all expenditures necessarily must come out of this common fund, or from voluntary advancements made by the trustees. Until the real estate is actually sold, and a fund is before the court for distribution, there exists no completed salvage operation. Under such circumstances, decisions relating to questions of allocation as between income and principal are most premature. * * * When the salvage operation is finally completed, and upon an accounting when there is a fund before the court for distribution, the parties may then appear and make application for equitable allocation of the funds as between income and principal. *Nirdlinger's Estate* (No. 2), 327 Pa. 171.

Implicitly the court disapproved the advances which the trustee had made for paying income to the life beneficiaries, for it held: "a fiduciary is entitled to receive interest on advances or loans made for carrying charges and improvements, but not for advances on income distributions." Later the *Nirdlinger* rule was held inapplicable altogether if the salvage operation should result in a profit. *Cope's Estate (No. 1)*, 50 Pa. D. & C. 189 (Apr. 14, 1944); affd., 351 Pa. 514; 41 Atl. (2d) 617 (Mar. 15, 1945).

On May 3, 1945, the Pennsylvania Legislature enacted the Uniform Principal and Income Act, Purden's Pennsylvania Statutes, Annotated, title 20, ch. 11, which makes no distinction between property owned by the grantor or decedent and property acquired by the trustee or executor in a salvage operation, and provides in section 2 that expenses incurred in disposing of or as carrying charges on unproductive real property shall be paid out of principal. By section 12 an unproductive property is defined as one:

> (2) * * * which for more than a year * * * has not produced an average net income of at least one per centum * * *, and the trustee is under a duty to change the form of the investment as soon as it may be done without sacrifice of value, * * *
>
> * * * * * * *
>
> (4) If the tenant has received any income from the property, * * * his share of the delayed income shall be reduced by the amount of such income received * * *.

From the foregoing review it is plain that from 1937 until 1945 the Pennsylvania apportionment rule was in an unsettled process of

evolution, and that the trustee's duty was not consistently fixed during the taxable years 1937, 1938, and 1940.

Respondent earnestly argues, however, that the opinion in *In re Nirdlinger's Estate (No. 2)*, *supra*, requires a decision in his favor here, contending that the trustee's acquisition of the building in extinguishment of ground rent was tantamount to a trustee's acquisition of mortgaged property in the collection of a mortgage debt. We agree that there is substantial analogy, and that after that decision a trustee was under a duty to pay to the life beneficiary the net income from real estate acquired by him in a salvage operation, or if the property so acquired was unproductive, to pay the carrying charges on it from trust principal. But two considerations render an application of that rule to this trust's building at least doubtful.

First, while the trustee's acquisition was a salvage operation in the sense that he was recovering what he could from the trust's right to ground rent, he petitioned the Orphans' Court to approve acquisition because he believed "that under existing leases said building can be operated economically but properly so as to yield a substantial amount of net income." Such considerations are compatible only with the purpose of holding the building indefinitely as an income-producing asset. In a salvage operation, and more specifically in one contemplated by the *Nirdlinger's Estate* opinion, a subsequent sale is envisaged so that an apportionment of proceeds between life beneficiary and remainderman can be made in accordance with the Institute's formula. In *In re Nirdlinger's Estate (No. 1)*, *supra*, the court found the restatement rule sound:

\* \* \* in that it treats as advances money necessarily used from whatever source in acquiring the property and in holding it, and returns the money in full when the purpose of the advances has been achieved and the property sold.

Second, the *Nirdlinger's Estate* opinion makes no specific provision for the treatment of operating deficits from salvage property and *a fortiori* from property held as an investment. It is quite clear that the net income from a salvage property is payable to the life beneficiary and that "taxes, insurance, repairs and other carrying charges" are to be paid first from the property's gross income. It is equally clear that if a salvage property produces no gross income, the carrying charges "can be advanced out of principal," for such property is obviously "unproductive." The trust building here produced in 1938 more than enough gross rents to cover taxes and repairs, which qualify readily as carrying charges, but insufficient to cover operating expenses in addition. And while we note that trust-held real estate producing a small amount of rents insufficient to pay carrying charges and other minor expenses has been termed "unproductive," without discussion, in opinions involving an application of the *Nirdlinger's Estate* opinion,

*Kathryn E. T. Horn,* 5 T. C. 597; *John Frederick Lewis, Jr.,* 1 T. C. 449; affd. (C. C. A., 3d Cir.), 141 Fed. (2d) 221; *In re Pfromm's Estate, supra,* we do not regard them as decisive that a building which produced an annual rent of over $26,000 is to be so classed, especially if the rents can pay the carrying charges. And if it can not be classed as "unproductive," *Nirdlinger's Estate* does not require that carrying charges be paid from principal.

During 1939 and 1940 the trustee used trust income in general to pay trust expenses, as he had done from the beginning. There was no question about his duty to do so prior to 1937, and his accounts through 1937 received court approval in 1938. If the *Nirdlinger's Estate* decision of 1938 clearly imposed on him the duty to pay the building's carrying charges from principal in 1939 and 1940, we would have the right and the duty to hold petitioner taxable on a corresponding amount of trust income thereby released for distribution. *Commissioner* v. *Lewis, supra.* But for reasons above given, we do not think that the decision clearly so required. The trustee obviously did not think so, and petitioner sought no redress. Under such circumstances we adhere to our view expressed in *John Frederick Lewis, Jr., supra,* that:

* * * the interpretation of a trust by the interested parties should be given great consideration and not be set aside lightly. *Anna M. Chambers,* 17 B. T. A. 820; *E. L. E. Brenneman,* 10 B. T. A. 544; *Mary Helen Cadwalader,* 27 B. T. A. 1078, 1082. * * * To tax the petitioners upon income which cannot be said to be "distributable income" with finality and certainty as a matter of local law, would be to penalize the petitioners for their reliance upon the correctness of the trustees' acts. * * *

When the building was sold in 1945, the rule emerging from judicial interpretations of the decisions in *Levy's Estate* and *Nirdlinger's Estate* was superseded by the Uniform Principal and. Income Act, which fixes precisely petitioner's share of the sale proceeds, with adjustments to reflect prior charges or distributions, if any, and which does not perpetuate the distinctions herein discussed relating to an application of the former rule. If, as we must assume, a portion of the sale proceeds was awarded and taxed to petitioner in 1945, the computation reflects an adjustment for all taxable years here involved, and she has received income not according to any apportionment rule existing in former years, but according to a formula which has supplanted all former rules. Her rights, therefore, were determined in 1945 as they might have been determined by a prior court order. In *Kathryn E. T. Horn, supra,* we considered the case of a life beneficiary to whom the Orphans' Court of Philadelphia County, citing *Levy's Estate, supra,* had awarded in 1940 amounts charged by the trustee to income over a ten-year period, and held her taxable on the whole in that year, contrary to her contention that the amounts were dis-

tributable income and hence taxable in prior years. After noting that the beneficiary had made no request for distribution prior to 1940, we said:

\* \* \* Nothing in the record suggests that if such a request had been made the equities of the case would have warranted a court in granting it. See the *Lewis* case, *supra*. Therefore, before the order entered by the Orphans' Court in 1940 we are unable to agree with the petitioner that she was entitled of right to have the carrying charges of the unproductive trust real estate paid from trust principal rather than trust income. Not until the state court entered this order in 1940 was the income account of the trust increased by charging these expenses against principal, and not until then were any additional payments on account of trust income distributable to petitioner. \* \* \*

To the same effect is *Emily B. Harrison*, 7 T. C. 1. So here, we can not say that if petitioner had requested in 1939 and 1940 the amounts on which the Commissioner seeks to tax her, the trustee could have been forced to pay them, and if she had successfully brought suit, the year of the order awarding her the income would have fixed the year of her liability for tax. The possibility that she might have won is not sufficient to support a tax. The Commissioner's determination is reversed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*